617 So.2d 798 (1993)
T.J.R. HOLDING CO., Inc., a Florida corporation, d/b/a Cafe Risque, Appellant,
v.
ALACHUA COUNTY, a political subdivision of the State of Florida, Appellee.
No. 92-1782.
District Court of Appeal of Florida, First District.
April 28, 1993.
*799 Samuel Hankin of Hankin & Beverly, P.A., Gainesville, for appellant.
Mary A. Marshall and Robert Ott, Office of the County Atty., Gainesville, for appellee.
ZEHMER, Judge.
T.J.R. Holding Co., Inc., a Florida corporation doing business as Cafe Risque, appeals an order denying its motion for a temporary injunction. Cafe Risque sought to enjoin the application of Alachua County Ordinance 91-5, which prohibits nudity and sexual conduct, or the simulation of sexual conduct, within an alcoholic beverage establishment, primarily on grounds that it had not been adopted in accordance with the statutory provisions governing ordinance affecting the use of land. Cafe Risque contends that the court erred in ruling that Ordinance 91-5 did not affect the use of land within the meaning of subsection 125.66(6), Florida Statutes (1991), did not create a de facto change in zoning within the meaning of subsection 125.66(5), Florida Statutes (1991), and was not void ab initio because Alachua County failed to comply with the procedural notice and hearing requirements of the cited statutory provisions. Finding no error, we affirm.
In April 1991, Alachua County enacted Ordinance 91-5 in compliance with the procedures described by subsections 125.66(1) and (2), Florida Statutes (1991). The ordinance prohibited specifically described conduct involving nudity and explicit or simulated sexual activity in establishments serving alcoholic beverages located within the county. The ordinance recited that it was enacted in the exercise of the county's power to regulate conduct within such establishments. At that time, Cafe Risque operated a business in Alachua County serving alcoholic beverages and featuring live, nude dancers that was adversely affected by the prohibitions set forth in the ordinance. Cafe Risque filed a petition for a temporary injunction, permanent injunction, declaratory judgment, and supplemental relief, alleging that the ordinance was void, invalid, and unconstitutional. The court denied the petition for temporary injunction based on its finding that Alachua County had properly followed the statutory procedure set out in subsections 125.66(1) and (2) in enacting the ordinance. Cafe Risque moved for a rehearing and the court granted the motion, holding three evidentiary hearings. Finally, the court entered an order ruling that Ordinance 91-5 was not a land use or zoning ordinance that had to be enacted in compliance with subsections 125.66(5) or (6), and was properly enacted as a general ordinance in accordance with subsections 125.66(1) and (2). Based on these rulings, the court denied Cafe Risque's motion for rehearing. This appeal followed.
Cafe Risque first argues that the court erred in ruling that Ordinance 91-5 was not an ordinance that "affects the use of land" within the meaning of subsection 125.66(6),[1] thereby relieving the County of the requirement to comply with the notice and hearing requirements of that section. Recognizing there is no reported case law construing this operative language in subsection 125.66(6), Cafe Risque argues that several expert witnesses, including Alachua County's own expert witness, testified that the ordinance does affect the use of land within the meaning of subsection 125.66(6). According to Cafe Risque, the court should have accepted the uncontradicted *800 opinions of these experts in the absence of specific statutory provisions or case law giving a contrary construction to the operative language of subsection 125.66(6).
We reject this argument because the interpretation of a statute is a question of law to be determined solely by the court, not by expert witnesses. Lindsay v. Allstate Ins. Co., 561 So.2d 427 (Fla. 3d DCA 1990); Devin v. City of Hollywood, 351 So.2d 1022 (Fla. 4th DCA 1976). See also Williams v. State Department of Transp., 579 So.2d 226 (Fla. 1st DCA 1991); Seibert v. Bayport Beach and Tennis Club Ass'n, Inc., 573 So.2d 889 (Fla. 2d DCA 1990), rev. denied, 583 So.2d 1034 (Fla. 1991). While expert testimony may be relevant and helpful to the court in understanding the meaning of statutory language involving words of art or scientific and technical terms, such expert testimony is not controlling on the court's construction of the statute; indeed, such expert testimony is not even appropriate when the statutory language in question consists of ordinary words susceptible to being given plain effect consistent with their ordinary meaning. There is nothing so mysterious about the phrase "affects the use of land" as used in subsection 125.66(6) that the court could not construe and apply it in this case without the benefit of expert testimony. Indeed, it is patently clear to us that the ordinance in question was intended to regulate, and did only regulate, specifically described conduct within establishments serving alcoholic beverages in the affected areas of Alachua County without regard to the owner's "use of land" on which the establishment was located. For this reason, the enactment of ordinance 91-5 did not implicate the provisions of subsection 125.66(6).
Cafe Risque next argues that the subject ordinance reflects the County's attempt to legislate as a zoning body without actually calling the process "zoning." As examples supporting this argument, Cafe Risque cites Ellison v. City of Fort Lauderdale, 183 So.2d 193 (Fla. 1966), and Daytona Leisure Corp. v. City of Daytona Beach, 539 So.2d 597 (Fla. 5th DCA 1989), and argues that, like Ellison and Daytona Leisure Corp., the County in this case enacted a zoning ordinance and was therefore required to comply with the notice and hearing requirements of subsection 125.66(6).
Again, this argument is without merit as both of these cases are plainly inapposite. The ordinance at issue in Ellison completely prohibited the keeping of horses on land zoned R-O. The supreme court, in a concise discussion, understandably held that the ordinance was a zoning ordinance and had to be enacted in compliance with the procedural safeguards required for the enactment of such ordinances. The ordinance at issue in Daytona Leisure Corp. prohibited the service of alcoholic beverages "within 200 feet of any property that is zoned residential." The fifth district held the ordinance void ab initio because the city did not enact it in compliance with the statutory procedures governing zoning and rezoning; the fact that the ordinance in Daytona Leisure Corp. was an emergency zoning ordinance was not even in dispute. As both cases involved ordinances that showed on their face that a "zoning" regulation was involved, neither Ellison nor Daytona Leisure Corp. persuades us that the subject ordinance represents an attempt by Alachua County to enact a "zoning ordinance" without calling it such and complying with the statutes governing the enactment of zoning ordinances.
Cafe Risque's final argument is that the court erred in holding that the ordinance did not create a de facto change in zoning within the meaning of subsection 125.66(5), Florida Statutes (1991), and in not requiring the County to comply with the procedural formalities of that statutory provision. According to Cafe Risque, the subject ordinance is a de facto change in zoning because it applies only to discrete geographic locations in Alachua County rather than to all areas in the county generally.
Alachua County Ordinance 91-5 describes the area to which it applies in the following language:
All territory within the legal boundaries of unincorporated Alachua County and *801 the territory within the legal boundaries of the City of Archer, the City of Gainesville, the City of Hawthorne, the City of High Springs, the Town of Micanopy, and the City of Waldo shall be embraced by the provisions of this ordinance.
Alachua County is a charter county, and the charter gives the county the right to include all of the incorporated and unincorporated areas of the county within the regulatory effect of a county ordinance. The charter also allows municipalities in the county to opt out of the regulatory effect of a particular county ordinance, however. It is not disputed in this case that the failure to include certain municipalities in the effective area of regulation by ordinance 91-5 is predicated solely on those municipalities' exercise of the available option to be excluded from its regulatory effect. The exercise of this opt-out power by one or more municipalities in the county does not change the County's ordinance from one of general applicability to one intended to affect only land in certain areas of the county and thereby create de facto zoning districts, as suggested by Cafe Risque.
A trial court has wide discretion to grant or deny a temporary injunction, and an appellate court will not interfere with the exercise of such discretion unless the party challenging the grant or denial clearly shows an abuse of that discretion. Bailey v. Christo, 453 So.2d 1134, 1136 (Fla. 1st DCA 1984), rev. denied, 461 So.2d 113 (Fla. 1985). See also Groff G.M.C. Trucks v. Driggers, 101 So.2d 58 (Fla. 1st DCA 1958); Gooding v. Gooding, 602 So.2d 615 (Fla. 4th DCA 1992). Cafe Risque has not shown that the trial court abused its discretion in denying the petition for temporary injunction in this instance.
AFFIRMED.
JOANOS, C.J., and WEBSTER, J., concur.
NOTES
[1] Subsection 125.66(6), Florida Statutes (1991), provides in pertinent part:

Ordinances or resolutions initiated by the board of county commissioners or its designee which do not actually change the zoning designation applicable to a piece of property but do affect the use of land, including, but not limited to, land development regulations as defined in s. 163.3202, regardless of the percentage of the total land area of the county actually affected, shall be enacted or amended pursuant to the following procedure... .