INTERNATIONAL EATERIES
OF AMERICA, INC., et
al., Plaintiffs,

v.

BOARD OF COUNTY COMMISSIONERS
OF BROWARD COUNTY, FLORIDA,
et al., Defendants.

DMH, INC., et al., Plaintiffs,

v.

BOARD OF COUNTY COMMISSIONERS
OF BROWARD COUNTY, FLORIDA,
et al., Defendants.

BORDO, INC., et al., Plaintiffs,

v.

BOARD OF COUNTY COMMISSIONERS
OF BROWARD COUNTY, FLORIDA,
et al., Defendants.

3299 N. FEDERAL HIGHWAY, INC., a
Florida corporation, d/b/a Crazy
Horse Too, Plaintiff,

v.

BOARD OF COUNTY COMMISSIONERS
OF BROWARD COUNTY, FLORIDA,
et al., Defendants.

Nos. 93–6749–CIV to 93–6751–
CIV and 93–6754–CIV.

United States District Court,
S.D. Florida.

Oct. 29, 1993.

David A. Wasserman, Casselberry, FL, Daniel R. Aaronson, James Scott Benjamin, Benjamin & Aaronson, Charles L. Curtis, Doumar, Curtis, Cross, Laystrom & Perloff, Fort Lauderdale, FL, Luke C. Lirot, Clearwater, FL, for plaintiffs.

Robin S. Richards, Broward County, Ron Cochran, Sheriff, Fort Lauderdale, FL, Kee Juen Eng, FL Atty. Gen. Office, Dept. of Legal Affairs—Civ. Div., Hollywood, FL, John J. Copelan, Jr., Broward County Attys. Office, Sharon L. Cruz, Broward County Atty., Fort Lauderdale, FL, for defendants.

### AMENDED ORDER OF REMAND

NESBITT, District Judge.

This cause comes before the Court upon the motions to remand filed by Plaintiffs in two of these four cases.

## BACKGROUND

These suits were filed by several "adult" bookstores and dancing establishments in Broward County against Broward County's Board of Commissioners ("Board of Commissioners") and various officials in the Broward County government. All four suits concern the legal validity of Broward County Ordinance 93–18 ("Ord. 93–18"), which was adopted by the Board of Commissioners on July 13, 1993. This ordinance includes extensive provisions governing the licensing of establishments supplying adult materials or entertainment, regulating conduct within such establishments, specifying the physical dimensions which the structures housing these establishments must possess, regulating the manner in which the establishments may be operated, and providing a scheme for the enforcement of these regulations. Plaintiffs' complaints assert that both the manner in which Ord. 93–18 was adopted, and the text of the ordinance itself, violate multiple provisions of the Florida Statutes, the Florida Constitution, and the Federal Constitution.

Plaintiffs initially filed these four suits in the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County, Florida. Cases *International Eateries of America, et al. v. Board of County Commissioners, Broward County, et al.*, Case No. 93–6749–Civ-Davis ("*International Eateries*"); *DMH, Inc., et al. v. Board of County Commissioners, et al.* ("*DMH*"), Case No. 93–6750–Civ-Roettger; and *Bordo, Inc., et al. v. Board of County Commissioners, Broward County, Florida, et al.* ("*Bordo*"), Case No. 93–6751–Civ-Nesbitt, were filed on August 17, 1993, while *3299 N. Federal Highway, Inc. d/b/a Crazy Horse Too v. Board of County Commissioners of Broward County, Florida, et al.* ("*Crazy Horse*"), Case No. 93–6754–Civ-Graham, was filed on September 1, 1993. Plaintiffs filed motions for temporary injunction in each of the cases. On September 2, 1993, a hearing was held before the Honorable James Reasback on the motion for temporary injunction filed in *DMH*. Before Judge Reasback could issue a ruling, howev-

er, Defendants removed all four cases to this Court on September 3, 1993.

In federal court, Defendants Michael Satz ("Satz") and Ron Cochran ("Cochran") filed motions to dismiss in all four cases. In addition, Plaintiffs in *International Eateries* and *Crazy Horse* filed motions for remand. Finally, on September 17, 1993, Plaintiffs in all four cases collectively filed an emergency motion for consolidation which was assigned to the Honorable Federico Moreno. In an Order signed on September 20, 1993, Judge Moreno ordered the consolidation of the four cases and transferred *International Eateries* and *DMH* to this division of the Court on behalf of the Honorable Edward Davis and the Honorable Norman Roettger. On the same day, the Honorable Donald Graham transferred *Crazy Horse* to this division. On September 20, 1993, a hearing was held on the issue whether to remand the cases pursuant to the one of the federal abstention doctrines. All parties were present or represented at the hearing and were heard on the issue. The Court's findings and ruling follow.

## ANALYSIS

The Court recognizes that it has jurisdiction over the federal questions presented in these cases pursuant to 28 U.S.C. § 1331 and over the state questions pursuant to 28 U.S.C. § 1367. Under certain circumstances, a federal court may decline to exercise jurisdiction over a case properly before it. These circumstances are defined by the following four abstention doctrines: 1) abstention under *Railroad Comm'n of Texas v. Pullman*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941) ("*Pullman* abstention"), under which a federal court has discretion to decline to exercise jurisdiction over a case involving federal constitutional issues and unsettled questions of state law, the resolution of which might moot the constitutional issues; 2) abstention under *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943) ("*Burford* abstention"), under which a federal court must dismiss or remand an action involving difficult questions of state law where federal intervention might disrupt state efforts to formulate a coherent policy in

an area of particular local concern; 3) abstention under *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) ("*Younger* abstention"), under which a federal court must not enjoin ongoing state proceedings implicating important state interests where the parties have an adequate opportunity to raise the federal issues in state court; and 4) abstention under *Colorado River Water Conserv. District v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976) ("*Colorado River* abstention"), under which a federal court may stay, but not dismiss, an action pending before it when there is a concurrent, separate action pending in state court that raises the same, or substantially the same issues.

In the present case, all proceeding related to Ord. 93–18 have been removed to this Court and there is therefore no risk that this Court will have to enjoin ongoing state proceedings. Moreover, there is no concurrent state action raising the same or substantially similar issues. The *Younger* and *Colorado River* abstention doctrines therefore do not apply. The Court considers the applicability of the *Pullman* and *Burford* doctrines below.

■ As noted, under the *Pullman* abstention doctrine, a federal court has discretion to abstain from the exercise of its jurisdiction over a case involving both federal constitutional issues and unsettled questions of state law, where resolution of the state issues might moot, or substantially modify, the federal constitutional issues. *Railroad Comm'n v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941); *Rindley v. Gallagher,* 929 F.2d 1552, 1554 (11th Cir.1991). The doctrine applies when: 1) the case presents an unsettled question of state law and 2) the question is dispositive of, or would substantially modify, the constitutional questions presented. *Id.* at 1554. A question of state law is unsettled if it is fairly subject to a construction that would avoid the federal constitutional issues in the case. *Id.*

There are three ways in which a question concerning a state ordinance may be unsettled within the meaning of the *Pullman* doctrine. First, the ordinance itself may be ambiguous. If the ordinance itself can be fairly construed to avoid any conflict with the

Constitution, then the Court must abstain and await the State's actual construction of the ordinance. *See City of Houston, Texas v. Hill,* 482 U.S. 451, 107 S.Ct. 2502, 96 L.Ed.2d 398 (1987). Second, if it is clear that some discrete parts of the ordinance are unconstitutional, but that these parts can be severed from the remainder of the ordinance without destroying its coherence, then the Court must await the State's court's decision whether to make such severance or not. *Id.* Finally, if it is not clear whether the ordinance is invalid under other state law, the Court must await the State's application of that other law to the ordinance.

As noted previously, Plaintiffs contend that Ord. 93–18 is invalid under several provisions of the Florida Statutes and the Florida Constitution. The four complaints are not uniform, however, and allege that the ordinance is invalid pursuant to different provisions. Nevertheless, all four complaints assert that the ordinance is invalid under sections 125.-66(6), 163.3164(22), and 163.3194(2) of the Florida Statutes. As the Court finds that state law is unsettled concerning whether the ordinance is invalid under these provisions, the Court need not determine whether the ordinance is ambiguous or whether discrete, unconstitutional portions of the ordinance are severable from the remainder of the document.

Sections 125.66(6) and 163.3194(2) specify procedures that a county board of commissioners must observe prior to the enactment of an ordinance regulating land use. Section 125.66(6) imposes requirements governing the form, timing and manner in which notice of a public hearing on a land use regulation must be published.[1] The parties do not dispute that the Board of Commissioners failed to comply with several of these requirements or that, if section 125.66(6) applies to Ord. 93–18, the ordinance is invalid. The parties do dispute, however, whether it is settled under state law that section 125.66(6) applies to the ordinance.

█ Defendants contend that the issue was resolved by a recent decision of the First District Court of Appeals. In *TJR Holding Co. v. Alachua County,* 617 So.2d 798 (Fla. App. 1 Dist.1993), the First District held that an ordinance banning nudity and explicit or simulated sexual conduct within establishments serving alcohol was not a land use regulation within the meaning of section 125.-66(6). The court based its decision on two grounds. First, the court explained that the ordinance at issue was clearly aimed at conduct within the targeted establishments, not at land use regulation:

> Indeed, it is patently clear to us that the ordinance in question was intended to regulate, and did only regulate, specifically described conduct within establishments serving alcoholic beverages in the affected areas of Alachua County without regard to the owner's "use of land" on which the land was located.

*Id.* at 800. Second, with minimal analysis, the court emphasized that the ordinance at

---

1. The section provides that:
   Ordinances or resolutions initiated by the board of commissioners or its designees which do not actually change the zoning designation applicable to a piece of property but do affect use of the land.... shall be enacted or amended pursuant to the following procedure:
   (a) The board of county commissioners shall hold two advertised public meetings on the proposed ordinance or resolution. Both hearings shall be held after 5 p.m. on a weekday, and the first shall be held approximately 7 days after the day that the first advertisement is published. The second hearing shall be held approximately 2 weeks after the first hearing and shall be advertised approximately 5 days prior to the public hearing. The day, time, and place at which the second public hearing will be held shall be announced at the first public hearing.
   (b) The required advertisements shall be no less than one-quarter page in a standard size or a tabloid size newspaper, and the headline in the advertisement shall be in a type no smaller than 18 point. The advertisement shall not be placed in that portion of the newspaper where legal notices and classified advertisements appear. The advertisement shall be published in a newspaper of paid general circulation in the county and of general interest and readership in the community pursuant to chapter 50, not one of limited subject matter. It is the legislative intent that, whenever possible, the advertisement shall appear in a newspaper that is published at least 5 days a week unless the only newspaper in the community is published less than 5 days a week ....

issue was not a zoning ordinance. *Id.* As the ordinance at issue in *TJR Holding* included provisions similar to Ord. 93–18, Defendants contend that Ord. 93–18 is not a land use regulation under that decision. Moreover, no other district court of appeals has considered the issue. Defendants point out, under Florida law, a state circuit court faced with an issue upon which only one district court of appeals has rendered a decision must follow that decision, regardless of whether or not the circuit court falls within the judicial district embraced by the district court that rendered the decision. Defendants conclude that *TJR Holding* is binding on any circuit court that might consider the status of Ord. 93–18 and that that status is therefore settled as a matter of state law.

The Court disagrees. The Court begins by noting that, while a circuit court is obligated to apply precedent from other districts in the absence of precedent from its own district court of appeals, a court is not obligated to follow precedent which may fairly be distinguished from the case before it. Moreover, the United States Supreme Court has explained that, where lower state authorities conflict with respect to a particular issue of state, a federal court should stay the exercise of its jurisdiction and await a decision by the state's supreme court. *Louisiana Power & Light Co. v. City of Thibodaux,* 360 U.S. 25, 79 S.Ct. 1070, 3 L.Ed.2d 1058 (1959) ("Caught between the language of an old but uninterpreted statute and the pronouncement of the Attorney General of Louisiana, the district judge determined to solve his conscientious perplexity by directing utilization of the resources of the state of Louisiana for a prompt ascertainment of the meaning through the only tribunal whose interpretation could be controlling—the Supreme Court of Louisiana. The District Court was thus exercising a fair and well considered judicial discretion in staying proceedings pending the institution of a declaratory judgment action and subsequent decision by the Supreme Court of Louisiana.").

The Court finds that both of these situations exist in the present case. This case is distinguishable from *TJR Holding* for several reasons. First, section 125.66(6) does not require that an ordinance qualify as a zoning ordinance in order to fall within the purview of the section. In fact, the section explicitly provides that an ordinance need not so qualify. Fla.Stat.Ann. § 125.66(6) ("Ordinances ... initiated by the board of county commissioners ... *which do not actually change the zoning designation applicable to a piece of property but do affect the use of land....* shall be enacted or amended pursuant to the following procedure ...") (emphasis added). Rather, the ordinance need only affect the use of land in order to trigger applicability of the section. Thus, *TJR Holding's* emphasis on whether the ordinance at issue was a zoning ordinance has no bearing on the present case.[2]

Second, the ordinance in the present case regulates far more than the ordinance at issue in *TJR Holding.* In addition to restricting the conduct permissible in adult entertainment establishments, Ord. 93–18 provides that a license to operate particular kinds of adult establishments will not be suspended unless the structures housing such establishments exhibit certain physical dimensions and lighting capabilities specified in section 3 of the ordinance. *See* Ord. 93–18 § 2.10(a)(3)(a) ("In the event two or more convictions for violations of the rules and regulations within Sections 3 and 4 of this Ordinance.... the Occupational Licensing Section shall ... suspend the license and notify the licensee of the suspension."); *see, e.g.,* Ord. 93–18 § 3.03(a)(2)(b) (requiring that an "adult theater" containing an "adult booth" "have a permanently open entrance way for each booth not less than two (2) feet eight (8) inches wide and not less than seven (7) feet high, which will never be closed or partially closed by a curtain, door, or other partition which would be capable of obscuring a person situated in the booth ...."). These requirements certainly do not restrict conduct permissible within adult establish-

---

**2.** The Court notes that *TJR Holding* also considered whether the ordinance at issue was a zoning ordinance for purposes of section 125.66(5). That section sets out certain notice provisions that must be complied with prior to the enactment of a zoning ordinance. The court's emphasis on zoning may therefore have been related to its consideration of that section.

ments and appear, on their face, to restrict the physical development of the structures occupying the land on which such establishments sit. They thus appear to "affect the use of land" within the meaning of section 125.66(6). No court in Florida has had the opportunity to consider the issue.

In addition, unlike the ordinance in *TJR Holding,* Ord. 93–18 also restricts the circumstances under which adult establishments may serve alcohol. In *Daytona Leisure Corp. v. Daytona Beach,* 539 So.2d 597 (Fla. App. 5 Dist.1989), the Fifth District Court of Appeals explained that:

> Ordinance 89–31 does substantially change the permitted use of Daytona Leisure's property: it prohibits the sale or dispensing of alcoholic beverages for consumption on the premises, which previously was permitted. It is sheer sophistry to say that this is not a change in a use previously permitted to the owner of property who is actively constructing an entertainment facility thereon to the tune of $800,000 or more.

This language strongly suggests that an ordinance that restricts the sale of alcohol on real property "affects the use of land" and therefore qualify for coverage under section 125.66(6). Once again, no Florida court has considered the issue. Based on the foregoing, the Court concludes that it is not clear that *TJR Holding* controls the issue whether Ord. 93–18 falls within the purview of section 125.66(6). Rather the issue is unsettled under state law.

The Court reaches the same conclusion with respect to sections 163.3164(22) and 163.3194(2). Section 163.3194(2) requires that, after a comprehensive land development plan for an area has been adopted by the governing body of the area, no land development regulation shall be adopted by the body until the regulation has been referred to a local planning agency or land development regulation commission, or both, for a review and recommendation. Fla.Stat. § 163.3194(2). The parties appear to agree that Broward County has adopted a comprehensive land development plan, that Broward County is a "governing body" within the meaning of the section, and that Defendants

did not submit Ord. 93–18 to a local planning agency or land development commission for review and recommendation prior to enactment of the ordinance. The only issue concerns whether Ord. 93–18 constitutes "land development regulation". Defendants contend, under state law, it is settled that ordinances like Ord. 93–18 are not land development regulations. Defendants rely on their arguments made in connection with section 125.66(6).

Under section 163.3164(22), "land development regulations" means:

> *[O]rdinances* enacted by governing bodies *for the regulation of any aspect of development* and *includes* any local government zoning, rezoning, subdivision, building construction, or sign regulations or *any other regulations controlling the development of land . . .*

Fla.Stat.Ann. § 163.3164(22) (emphasis added). The section clearly does not require that an ordinance qualify as a zoning ordinance in order to be covered by the section. Thus, as under section 125.66(6), the zoning analysis in *TJR Holding* does not control the question whether Ord. 93–18 is a land use regulation. Moreover, no Florida court has considered whether the provisions of Ord. 93–18 regulating the physical dimensions of structures housing adult entertainment establishments, and the lighting therein, regulate land development. For the reasons set out in connection with section 125.66(6), the Court finds that the issue is unsettled as a matter of state law.

██ As the applicability of sections 125.66(6), 163.3164(22), and 163.3194(2) to Ord. 93–18 is unsettled as a matter of Florida law and it is clear that Defendants did not comply with these sections prior to the enactment of the ordinance, the Court finds that the issue whether the ordinance is valid under state law is unsettled. Moreover, a determination that the ordinance is invalid under state law would moot all of the federal constitutional questions in all four of the instant cases. These cases therefore satisfy all of the *Pullman* requirements and abstention is appropriate under that doctrine.

Abstention is also appropriate under the *Burford* doctrine. The *Burford* doctrine applies when: 1) timely and adequate review of a state government action is available in state court, the case involves difficult questions of state law touching on policy problems of substantial importance, and 3) the exercise of federal jurisdiction would disrupt state efforts to develop a coherent policy. *New Orleans Public Service, Inc. v. Council of City of New Orleans,* 491 U.S. 350, 360, 109 S.Ct. 2506, 2514, 105 L.Ed.2d 298 (1989).

■ Timely and adequate review of any action Broward County takes is certainly available in state court. Moreover, as the above analysis under the *Pullman* doctrine, the case involves many difficult and unresolved questions of state law. In *Almodovor v. Reiner,* 832 F.2d 1138 (9th Cir.1987), the Ninth Circuit held that *Burford* abstention was inappropriate in a case involving the application of a state prostitution statute to an adult movie theater. The court emphasized, however, that the case involved construction of, at most, two simple state statutes. 832 F.2d at 1138. The present case, in contrast, involves the construction of a local ordinance in connection with multiple provisions of the state's statutory code governing land use and zoning and with multiple provisions of the State Constitution governing such matters as notice of public meetings and privacy. As a result, any court hearing the dispute will have to address a great deal of interrelated state law prior to reaching any of the federal issues in the case.

It is also clear that this state law involves issues of particularly sensitive local concern. Several courts have recognized that regulation of access to adult entertainment is a particularly sensitive area of social policy. *See Huffman v. Pursue, Ltd,* 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975) (applying *Younger* abstention doctrine to state nuisance action against pornographic movie theater); *Almodovar,* 832 F.2d at 1138. It is also well established that land use planning is an area of particularly local concern. *Santa*

*Fe Land Improvement Co. v. City of Chula Vista,* 596 F.2d 838 (9th Cir.1979).[3]

Finally, it is clear that federal intervention at this point would be disruptive. As noted above, the state has not ruled on many of the state issues presented, including whether ordinances of the type involved in this case affect the use of land and whether such ordinances constitute land use regulations under state law. Until the state has resolved these issues, intervention by a federal court would be premature.

ORDERED and ADJUDGED that the Court ABSTAINS from exercising its jurisdiction over these four cases pursuant to the *Pullman* and *Burford* abstention doctrines. It is further ORDERED and ADJUDGED that these four cases—Case Nos. 93–6749, 93–6750, 93–6751, and 93–6754—are REMANDED to the Circuit Court in the Seventeenth Judicial County, in and for Broward County, Florida in their entirety. *See Ganz v. City of Belvedere,* 739 F.Supp. 507, 510 (N.D.Cal.1990).

DONE and ORDERED.

---

**3.** As noted under the discussion of the *Pullman* doctrine, this case may involve issues concerning

land use regulation.