# Supreme Court of Florida

———————

Nos. SC2022-1733, SC2022-1735, SC2022-1745,
SC2022-1748, & SC2022-1777

———————

**CITIZENS OF THE STATE OF FLORIDA, etc.,**
Appellant,

vs.

**ANDREW GILES FAY, etc., et al.,**
Appellees.

November 14, 2024

COURIEL, J.

We have for review final orders of the Public Service

Commission approving proposals from four electric utility

companies to improve the power grid's ability to withstand extreme

weather. These initiatives are the first of their kind, submitted by

the utility companies pursuant to section 366.96, Florida Statutes,

which became law in 2019.[1] The Office of Public Counsel (OPC)

challenged the orders below and appeals the Commission's approval

———————

1. We have jurisdiction. *See* art. V, § 3(b)(2), Fla. Const.;
§ 366.10, Fla. Stat. (2021).

of them here, arguing that the Commission erred in its interpretation of the statute and impaired the fairness of the proceedings below by granting the utilities' motions to strike portions of an expert's testimony.

We decide that the Commission correctly reviewed and approved the utilities' proposals after concluding that they are in the public interest. Also, the Commission did not abuse its discretion in striking the expert testimony at issue.

**I**

Finding it in the state's interest to strengthen electric utility infrastructure to withstand extreme weather conditions, the Legislature enacted—in section 366.96, Florida Statutes (the SPP Statute)—a comprehensive program requiring public utilities to make adequate preparations for storms, allowing the utilities to recover some of the costs of those preparations from rate-paying customers. *See* ch. 19-158, Laws of Fla. Each public utility company must submit a Storm Protection Plan (SPP) "for the overhead hardening and increased resilience of electric transmission and distribution facilities, undergrounding of electric distribution facilities, and vegetation management." § 366.96(2)(b),

Fla. Stat. (2021).  These improvements—intended to increase the resiliency of the electric grid, reduce outages, and improve their response times during extreme weather—are collectively called "storm hardening."  *See generally* § 366.96, Fla. Stat.

The SPP Statute requires each public utility to file an SPP with the Commission, laying out its proposals in this regard for the next decade.  "Each plan must explain the systematic approach the utility will follow to achieve the objectives of reducing restoration costs and outage times associated with extreme weather events and enhancing reliability."  § 366.96(3), Fla. Stat.

SPPs are subject to approval by the Public Service Commission.  The Commission reviews each SPP every three years during the plan's ten-year coverage period.  At each three-year mark, the Commission must determine if it is in the public interest to approve the SPP measures proposed for the upcoming period.  *See* § 366.96(5)-(6), Fla. Stat.  In its review of each SPP, the Commission considers:

> (a) The extent to which the plan is expected to reduce restoration costs and outage times associated with extreme weather events and enhance reliability, including whether the plan prioritizes areas of lower reliability performance.

(b) The extent to which storm protection of transmission and distribution infrastructure is feasible, reasonable, or practical in certain areas of the utility's service territory, including, but not limited to, flood zones and rural areas.

(c) The estimated costs and benefits to the utility and its customers of making the improvements proposed in the plan.

(d) The estimated annual rate impact resulting from implementation of the plan during the first 3 years addressed in the plan.

§ 366.96(4), Fla. Stat.

The Commission's approval or denial of each SPP must occur within 180 days of its submission. Once the Commission has approved a plan, "proceeding with actions to implement the plan shall not constitute or be evidence of imprudence" by the utility. § 366.96(7), Fla. Stat.

The SPP Statute does not define "prudence" or "imprudence." However, chapter 366 of our statutes—the one relating to public utilities—refers to prudence or its cognates 24 times, often in describing costs. *See, e.g.*, § 366.95(1), Fla. Stat. (2021) ("The commission shall issue a financing order authorizing the financing of reasonable and prudent nuclear asset-recovery costs . . . ."); § 366.93(2), Fla. Stat. (2021) ("Such mechanisms must be designed to promote utility investment in nuclear or integrated gasification

- 4 -

combined cycle power plants and allow for the recovery in rates of all prudently incurred costs . . . ."); § 366.91(3), Fla. Stat. (2021) ("Prudent and reasonable costs associated with a renewable energy contract shall be recovered from the ratepayers . . . .").

The SPP Statute directs the Commission to adopt rules to guide how it is administered. So in January 2020, the Commission adopted Florida Administrative Code Rules 25-6.030, "Storm Protection Plan" (the SPP Rule), and 25-6.031, "Storm Protection Plan Cost Recovery Clause" (the SPPCRC Rule). The SPP Rule explains what an SPP must contain. The SPPCRC Rule sets out the costs that utilities may recover from customers and describes the procedures for recovery.

Following the requirements of the SPP Statute, the SPP Rule, and the SPPCRC Rule, Florida investor-owned utilities filed their first SPP proposals in April 2020. The OPC intervened on behalf of Florida consumers in the administrative proceedings regarding these proposals. The utilities, the OPC, and other intervenors entered into settlements approving the plans. As part of that process, the Commission heard oral argument from the parties in support of each settlement agreement and considered evidence

presented by the parties. Ultimately, the Commission approved the settlements and determined that the utilities' SPPs were in the public interest, pending review and approval in 2022. The 2020 settlements preserved the parties' rights to challenge the prudence of any projects in subsequent SPPCRC Rule proceedings.

The proceedings before us now started when, in 2022, the utilities timely submitted renewed proposals for the 2023-2032 period. The four utilities that filed were Florida Power & Light Company (FPL), Duke Energy Florida, LLC (DEF), Tampa Electric Company (TECO), and Florida Public Utilities Company (FPUC).[2] The OPC again intervened in each case.

The Commission ultimately issued final orders approving—to varying extents[3]—each SPP Plan, and the associated SPPCRC Rule docket. The OPC appeals the Commission's five final orders to us.

_____

2. FPUC filed its SPP in 2022 for the first time. It did not make an initial filing in 2020 due to delays caused by Hurricane Michael.

3. Where it determined that a utility's plan did not meet the public interest test, the Commission ordered modifications. For example, in FPUC's final order, the Commission determined:

> FPUC's SPP, with the following modifications, is in the public interest and is approved: (1) removal of the

The OPC argues that the Commission erroneously interpreted the SPP Statute and SPP Rule; it should have considered what the statute calls the "prudence" of the SPPs, in addition to whether those plans were in the public interest. What's missing, the OPC says, is a quantitative, dollar-to-dollar assessment of the estimated costs and benefits of the proposed SPP programs and projects. For example, the OPC argues that the Commission erred by not requiring FPL and FPUC to "provide the estimated reduction in outage times and restoration costs or a meaningful comparison of the estimated costs to those benefits."

Not so, respond the utilities: the SPP Statute establishes two distinct proceedings, one for plan review and another for cost recovery. While the SPP Statute requires the Commission to consider "the estimated costs and benefits to the utility and its customers of making the improvements proposed in the plan," that

---

Future T&D Enhancement Program, and (2) removal of the Transmission & Substation Resiliency Program. FPUC shall file an amended SPP within 30 days of the issuance of the final order for administrative approval by Commission staff.

does not mean what the OPC thinks it does: it is not a command to perform a "prudence review" of the SPPs when determining if they are in the public interest, but rather, to review the prudence of the costs undertaken in the separate cost recovery proceeding envisioned by the SPP Statute.

This case, then, requires us to decide if the Commission acted lawfully in approving the SPPs—that is, whether it correctly interpreted the SPP Statute and acted within its legal authority when it approved the plans. "Whether the [Commission] has the authority to act is a question of law, which is subject to de novo review." *Citizens of State v. Graham*, 191 So. 3d 897, 900 (Fla. 2016). First, we analyze the SPP Statute and conclude from its words and structure that the Commission's interpretation of it is correct; second, we explain why the Commission's determination did indeed adhere to what the statute requires.

**A**

The SPP Statute directs the Commission to "determine whether it is in the public interest to approve, approve with modification, or deny" the SPPs at issue. § 366.96(5), Fla. Stat. In the relevant (but, as we shall see, not identical) context of rate

making cases, we have said the public interest determination "is not a pure finding of fact that we are able to review by searching for competent, substantial evidence in the record. Instead, as suggested by the qualitative words with which it is described, the Commission's decision . . . rests on both facts in the record and policy judgments guided by its 'specialized knowledge and expertise in this area.' " *Floridians Against Increased Rates, Inc. v. Clark* (*FAIR*), 371 So. 3d 905, 910 (Fla. 2023) (quoting *Gulf Coast Elec. Coop., Inc. v. Johnson*, 727 So. 2d 259, 262 (Fla. 1999)). Once the Commission has done that work, ours is to decide whether its public interest determination "is within the range of discretion given to the Commission by the Legislature." *Id.* at 911 (citing § 120.68(7)(e)1., Fla. Stat. (2021)). And when they come to us, the Commission's decisions about what is in the public interest benefit from "the presumption that they are reasonable and just." *Id.* (quoting *W. Fla. Elec. Coop. Ass'n, Inc. v. Jacobs*, 887 So. 2d 1200, 1204 (Fla. 2004)).

The Commission is correct that chapter 366 is about more than rate making, for it says this Court will do more than review rates set by the Commission. *See* § 366.10, Fla. Stat. ("[T]he

- 9 -

Supreme Court shall review, upon petition, any action of the commission relating to rates *or service of utilities* providing electric or gas service." (emphasis added)). What is more, from its separation from sections 366.06 and 366.07, Florida Statutes (2021), it is evident that the SPP Statute stands apart from the rate making process, and in its unique language provides a separate procedure for the Commission's review of storm hardening measures. *See Conage v. United States*, 346 So. 3d 594, 598 (Fla. 2022) ("[T]he plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997))).

Sections 366.96(2) and (3) lay the groundwork for a process specific to the storm hardening context—as distinguished from rate making—by defining relevant terms and setting a timeline for the SPP proceedings.

The statute continues with subsections (4)(a)-(d), which lay out the required content of each plan. The statute directs the Commission to consider each plan's ability to "reduce restoration

costs and outage times . . . and enhance reliability"; whether the plan is "feasible, reasonable, or practical"; the "estimated costs and benefits"; and the "estimated annual rate impact" of the SPP in the first three years. § 366.96(4)(a)-(d), Fla. Stat. Here the Commission is not directed to consider actual incurred costs. That comes later. Instead, subsection (4) lists those factors that the Commission is to consider "[i]n its review of each transmission and distribution storm protection plan filed pursuant to this section." *Id.*

Subsection (4) does not require the Commission to determine that the benefits of the proposed plan outweigh its costs. Certainly it lists what the Commission must consider about each plan. And certainly those considerations include "[t]he extent to which the plan is *expected* to reduce restoration costs and outage times," "*estimated* costs and benefits to the utility and its customers of making the improvements proposed in the plan," and any "*estimated* annual rate impact resulting from implementation of the plan." § 366.96(4)(a), (c)-(d), Fla. Stat. (emphasis added). But the statute expressly recognizes the tentativeness of these datapoints, and thus the infeasibility of a definitive computation of net cost or benefit at the plan approval phase.

- 11 -

Subsection (5) provides the purpose of the Commission's review: to evaluate proposed SPPs in 180 days to "determine whether it is in the public interest to approve, approve with modification, or deny the plan." We read the requirements of subsection (4) in their physical and logical relationship to subsection (5) and conclude that the former sets out the content of the public interest determination required by the latter. *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 167 (2012) (explaining that we must consider "the physical and logical relation of [a text's] many parts"); *see also Lab'y Corp. of Am. v. Davis*, 339 So. 3d 318, 324 (Fla. 2022) ("Under the whole-text canon, proper interpretation requires consideration of 'the entire text, in view of its structure and of the physical and logical relation of its many parts.' " (citing Scalia & Garner, *supra*, at 167)); *Allstate Ins. Co. v. Revival Chiropractic, LLC*, 385 So. 3d 107, 113 (Fla. 2024) ("Provisions in the texts of statutes and contracts cannot be viewed in isolation from the full textual context of which they are a part.").

From its language and location in the statute, we discern that subsection (7) does something different. The most sensible reading

of this provision—which says that proceeding with actions to implement an approved plan will not later be deemed evidence of imprudence for a utility's cost recovery purposes—is that if, in fact, any costs ultimately incurred exceed the relevant component of forecasted benefit, that deficiency will not constitute evidence of imprudence by the utility, as long as the plan has duly considered the expected or estimated data, and the Commission has found the plans made in light of that consideration to have been in the public interest.

It helps to read subsection (7) in the context of the subsection it follows:

> (6) At least every 3 years after approval of a utility's transmission and distribution storm protection plan, the utility must file for commission review an updated transmission and distribution storm protection plan that addresses each element specified by commission rule. The commission shall approve, modify, or deny each updated plan pursuant to the criteria used to review the initial plan.
> (7) After a utility's transmission and distribution storm protection plan has been approved, proceeding with actions to implement the plan shall not constitute or be evidence of imprudence. The commission shall conduct an annual proceeding to determine the utility's prudently incurred transmission and distribution storm protection plan costs and allow the utility to recover such costs through a charge separate and apart from its base rates, to be referred to as the storm protection plan cost

recovery clause.  If the commission determines that costs were prudently incurred, those costs will not be subject to disallowance or further prudence review except for fraud, perjury, or intentional withholding of key information by the public utility.

§ 366.96(6)-(7), Fla. Stat.

Subsection (6) separates the preceding public interest determination process from a subsequent "cost recovery" process. Helpfully, the first word of subsection (7) is "[a]fter"—here a subordinating conjunction—and the clause it introduces tells us that "proceeding with actions to implement the plan shall not constitute or be evidence of imprudence."  It is only after the time described in this clause that we come to the statute's four references to "prudence" and its cognates.  They appear in the context of the "annual review proceeding" the Commission must undertake "to determine the utility's prudently incurred transmission and distribution storm protection plan costs" which decide the utility's right "to recover such costs through a charge separate and apart from its base rates."  § 366.96(7), Fla. Stat.

As the Commission did, we read this text to identify a separate phase of cost recovery proceedings, the purpose of which is to determine the recoverability by the utilities of certain costs, and not

whether an SPP is in the public interest. Actions taken to implement an approved plan shall not be deemed evidence of imprudence for subsection (7)—that is, cost recovery—purposes. It is still the Commission's duty at that point to determine which costs were prudently incurred, for it is only "those costs [that] will not be subject to disallowance or further prudence review except for fraud, perjury, or intentional withholding of key information by the public utility." § 366.96(7) Fla. Stat.

The fact that rate payers will bear some SPP-related costs, as set forth in the SPPCRC Rule, does not convert the statute to a rate making proceeding. We see in the inclusion of the words "separate and apart from its base rates" a legislative choice to demarcate the lines between the SPPCRC Rule and rate making proceedings described elsewhere in chapter 366. *Id.*; *see Sierra Club v. Brown*, 243 So. 3d 903, 908 (Fla. 2018) (expressly differentiating between the Commission's rate making proceedings where utilities "recover costs for capital investments" and its general review of settlements for the public interest).

To determine what is in the public interest, the Commission starts with what the relevant statute commands: here, at section

366.96(1) and (4).  *See FAIR*, 371 So. 3d at 912-13.  Subsection (1) says, among other things, "[i]t is in the state's interest to strengthen [Florida's] electric utility infrastructure to withstand extreme weather conditions," to promote "overhead hardening" of electrical facilities and the "undergrounding" of electrical distribution lines, and to "mitigate restoration costs and outage times."  *See* § 366.96(1)(c)-(e), Fla. Stat.  Subsection (4) gives specificity to the factors the Commission must consider in deciding whether a particular plan is in the public interest, as that interest is described in subsection (1).

By contrast, when the Commission determines whether a utility's costs have been prudently incurred, it considers "what a reasonable utility manager would have done, in light of the conditions and circumstances that were known, or should [have] been known, at the time the decision was made."  *Duke Energy Fla., LLC v. Clark*, 344 So. 3d 394, 395 (Fla. 2022) (alteration in original) (quoting *S. All. for Clean Energy v. Graham*, 113 So. 3d 742, 750 (Fla. 2013)).  Each utility bears the burden of proving that its investment choices are prudent.  *See* § 366.06(1), Fla. Stat. (requiring that costs must be "prudently invested by the public

- 16 -

utility company"). Instead of performing the analysis outlined above, when it considers the prudence of costs undertaken by a utility, the Commission "shall investigate and determine the actual legitimate costs . . . actually used and useful in the public service." *Id.* In this retrospective evaluation, the Commission reviews incurred costs to ensure investments are made "honestly" and "prudently" and are "useful in serving the public." *Id.* What is at stake for the utility is whether it will be paid for something it planned to do, and in fact did.

In summary, the Commission's work when it decides what is in the public interest is different from the work it does when it decides whether a utility acted prudently. It makes those decisions at different times, considering different statutorily described factors. As a matter of colloquial speech, an imprudent investment or cost may not be in the public interest. But while it speaks plainly, the statute does not speak colloquially. The two determinations can be distinguished. The Commission is correct that the SPP Statute calls for a review of the utilities' SPPs to determine if they are in the public interest, and not whether the investments they propose are,

in the sense in which the term has been used in this carefully drafted statute, prudent.

**B**

The Commission correctly determined that the SPPs at issue are in the public interest. That is because it did as the SPP Statute required and considered the factors provided in section 366.96(4), as further detailed in the SPP Rule. *See* Fla. Admin. Code R. 25-6.030.[4] Paragraph (3) of that rule requires that utilities' SPPs provide:[5]

> (d) A description of each proposed storm protection program that includes:
>> 1. A description of how each proposed storm protection program is designed to enhance the utility's existing transmission and distribution facilities including an estimate of the resulting reduction in outage times and restoration costs due to extreme weather conditions;
>> 2. If applicable, the actual or estimated start and completion dates of the program;

---

4. "Each utility as defined in Section 366.96(2)(a), F.S., must file a petition with the Commission for approval of a[n SPP] . . . ." Fla. Admin. Code R. 25-6.030(1). "For each Storm Protection Plan, the following information must be provided . . . ." *Id.* R. 25-6.030(3).

5. While there are other content requirements, the OPC mostly takes issue with FPL and FPUC's fulfillment of subparagraph (3)(d)1.-4.

- 18 -

3. A cost estimate including capital and operating expenses;
4. A comparison of the costs identified in subparagraph (3)(d)3. and the benefits identified in subparagraph (3)(d)1.; and
5. A description of the criteria used to select and prioritize proposed storm protection programs.

*Id.* R. 25-6.030(3)(d)1.-5.

FPL met the criteria set by the SPP Rule.[6]  FPL addressed each section of its SPP to correlate with the criteria required by the SPP Rule.  Each section of the SPP provides a description of the storm hardening program, explains potential benefits, and lists estimated costs.  *See id.* R. 25-6.030(3)(d)1.-3.  For each proposed program in the SPP, FPL provided "a cost estimate" and "a comparison of the costs and benefits for each program."  *Id.* R. 25-6.030(3)(d)4.-5. FPL provided charts with quantitative estimates for 2023-2025, and for the 2023-2031 term.  *See id.* R. 25-6.030(3)(d)3.

FPUC also fulfilled the criteria set by the SPP Rule.  FPUC detailed the estimated overall costs and provided express "cost/benefit comparison" sections for each program throughout

---

6.  We address only FPL's and FPUC's proposed SPPs because the OPC alleges that they are the two utilities that did not fulfill the requirements posed by the SPP Rule.

the SPP. *See id.* R. 25-6.030(3)(d)4.-5. In each "cost/benefit comparison" section, FPUC claims that the "[p]rojected benefits associated with the [program] include a reduction in storm restoration costs and increase in service reliability; associated with a reduction in outage events during both extreme and non-extreme weather conditions." *See id.* R. 25-6.030(3)(d)1. FPUC uses previous data from prior hurricanes to illustrate how estimated outage times are significantly reduced through its storm hardening programs. *Id.* Like FPL, FPUC provides a qualitative description estimating reductions through its prior hurricane experience.

The Commission, on the basis of these presentations, "explain[ed] why it reached its conclusions and how those conclusions factored into its public interest determination." *FAIR*, 371 So. 3d at 913. We have said that, in making a public interest finding, the Commission should (1) consider all parties' arguments, (2) apply the public interest factors of the SPP Statute, and (3) provide an explanation of how it reached its decision based on the evidence. *Id.* at 912. Here, the Commission provided "reasoned and articulated" final orders explaining why FPUC and FPL's SPPs were in the public interest. *Id.* at 911.

- 20 -

The FPL final order, while it is no model of detailed reasoning, adequately supports the Commission's public interest determination as required by section 366.96(4). In explaining how FPL estimated its reduction in restoration costs and outage times, it says:

> Using the historical data analysis, the Utility estimated the reduction in outage times and restoration costs that would result from the implementation of its proposed SPP programs. The historical data demonstrates that FPL's prior storm hardening projects reduced restoration costs and outage times associated with extreme weather events. Based on the historical data, FPL demonstrated that its SPP is expected to reduce restoration costs and outage times associated with extreme weather and enhance reliability.

This statement at least identifies as a basis for the Commission's approval FPL's prior storm hardening projects and their positive effect on restoration costs and outage times.[7] Additionally,

---

7. Nothing in the statute precludes the Commission from providing a more substantive account of how projects are in the public interest, including by discussing their expected or realized benefits to considerations of health, safety, and economic security, and by providing an account of how their costs or burdens fall on different customers. *See* Jodi L. Short, *In Search of the Public Interest*, 40 Yale J. on Regul. 759, 772-78, 824-25 (2023). In layman's terms, the question to be answered is, "Are these projects worth it?" A spreadsheet netting out expenditures and savings may

section V of the Commission's final order addresses the "estimated costs and benefits of FPL's SPP." *See* § 366.96(4)(c), Fla. Stat. It identifies evidence that the Commission used to inform its decision. Ultimately, the Commission gave the green light to eight previously approved SPP programs, which had been submitted as part of FPL's prior SPP. The Commission rejected other proposed programs that did not meet the definition of storm hardening and therefore would not be in the public interest. *See* § 366.96(2)(b), Fla. Stat. (defining acceptable SPPs as overhead hardening or undergrounding initiatives).

The FPUC final order also passes muster. Following the same format and methodology of FPL's final order, the Commission restated the parties' arguments, analyzed how FPUC fulfills each statutory requirement, and described how the evidence adduced by FPUC supported the Commission's public interest determination. *See FAIR*, 371 So. 3d at 912. The Commission explained how FPUC used its experience from Hurricane Michael to illustrate how its

---

be part of its answer, but nothing prevents the Commission from saying more.

proposed SPP programs would harden its systems, and consequently reduce restoration costs and outage times. *See* § 366.96(4)(a), Fla. Stat. The Commission also accepted FPUC's data representing the SPP programs' estimated rate impact. *See* § 366.96(4)(d), Fla. Stat. The Commission rejected two proposed programs, finding they did not qualify as storm protection activities within the public interest.

The Commission's final orders as to TECO and DEF also provide adequate support for a public interest determination. The orders are shorter in length but contain similar critical information: restatement of the parties' arguments, evidence and testimony of key experts, and a conclusion that the proposed plans meet the requirements of the SPP Statute. DEF's SPP is estimated to reduce restoration costs by approximately $50 million per year and reduce customer interruption to around 400 million minutes on average per year. *See* § 366.96(4)(a), Fla. Stat. And for each proposed program, TECO provided an estimate of the decrease in restoration costs and in the delay customers would experience before having power restored. *See id.* In both final orders, the Commission disapproves programs that it explains either lacked sufficient

evidence to satisfy the public interest ("TECO did not provide sufficient data supporting its position") or were not programs in the public interest as intended by the SPP Statute (DEF collaboration with Walmart not in the public interest as it "does not meet the definition as laid out in the statute").  *See* § 366.96(2)(b), Fla. Stat.

### III

The Commission did not abuse its discretion or impair the fairness of the proceedings by excluding expert witness Kollen's testimony.  The Commission was within its authority to conclude that Kollen's testimony included improper legal opinion and was in any event admitted into the SPPCRC Rule record, where its relevance was not at issue.

Kollen's testimony contained impermissible legal opinion in that he contended that the SPP Statute and Rule incorporate a prudence review—precisely the legal question at issue.  Florida law generally precludes expert testimony where it constitutes an opinion on such a question of law.  *See* § 90.702, Fla. Stat. (2021) (permitting expert testimony in the form of an opinion if based on facts or data and produced by reliable principles or methods, and the principles are applied reliably to the facts); *Town of Palm Beach*

*v. Palm Beach Cnty.*, 460 So. 2d 879, 882 (Fla. 1984) (deciding that expert testimony cannot opine on how a case should be determined); *see also T.J.R. Holding Co., Inc. v. Alachua Cnty.*, 617 So. 2d 798, 800 (Fla. 1st DCA 1993) ("[T]he interpretation of a statute is a question of law to be determined solely by the court, not by expert witnesses."); *Bunin v. Matrixx Initiatives, Inc.*, 197 So. 3d 1109, 1110 (Fla. 4th DCA 2016). That's what this was. The OPC admits Kollen's complete "testimony contains a variety of [his] expert interpretations of the requirements of the SPP Statute, and the SPP and SPPCRC Rules." Because an expert's interpretation of questions of law and legal statutes is impermissible, his testimony was properly excluded.

Also, granting the motion to strike Kollen's testimony did not impair the fairness of the proceedings. Under section 120.68(7)(c), Florida Statutes (2021), "[t]he fairness of the proceedings or the correctness of the action" may be impaired by "a material error in procedure or a failure to follow prescribed procedure." § 120.68(7)(c), Fla. Stat.; *see also Citizens of Fla. v. Mayo*, 333 So. 2d 1, 8-9 (Fla. 1976) (remanding where inadequate Commission findings caused a "material error in procedure" that "affected both

- 25 -

the fairness and the correctness" of the proceedings). It was no procedural error to exclude Kollen's legal opinion testimony. Indeed, where Kollen's testimony did not constitute improper legal opinion, or was relevant to his expertise as an economist, it was admitted. The record contains Kollen's testimony regarding the SPPs' effects on customer rates, their costs compared to the benefits of certain programs, and his opinion on utilities' decision criteria. And in the SPPCRC Rule proceedings, where the parties agree that a prudence review is appropriate, Kollen's testimony was admitted. The OPC was offered a fair and equal opportunity to present its arguments despite the stricken testimony.

## IV

We affirm the Commission's final orders.

It is so ordered.

MUÑIZ, C.J., and CANADY, LABARGA, GROSSHANS, FRANCIS, and SASSO, JJ., concur.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION AND, IF FILED, DETERMINED.

An Appeal from the Florida Public Service Commission

Charles J. Rehwinkel, Deputy Public Counsel, Mary A. Wessling, Patricia A. Christensen, Danijela Janjic, and Octavio Simoes-Ponce,

Associate Public Counsels, Office of Public Counsel on behalf of The Florida Legislature, Tallahassee, Florida,

for Appellant Citizens of the State of Florida

Keith C. Hetrick, General Counsel, Samantha M. Cibula, Attorney Supervisor, and Susan Sapoznikoff, Senior Attorney, Jonathan H. Rubottom, Senior Attorney, Florida Public Service Commission, Tallahassee, Florida,

for Appellee Florida Public Service Commission

Dianne M. Triplett and Matthew R. Bernier of Duke Energy Florida, LLC, Tallahassee, Florida; Michael P. Silver and Alyssa L. Cory of Shutts & Bowen LLP, Tampa, Florida, and Daniel E. Nordby of Shutts & Bowen LLP, Tallahassee, Florida,

for Appellee Duke Energy Florida

C. Alan Lawson, Paul C. Huck, Jr., Jason Gonzalez, and Amber Stoner Nunnally of Lawson Huck Gonzalez, PLLC, Tallahassee, Florida,

for Appellee Florida Power & Light Company

Lauren V. Purdy, Beth Keating, and Jounice L. Nealy Brown of Gunster, Yoakley & Stewart, P.A., Jacksonville, Florida,

for Appellee Florida Public Utilities Co.

J. Jeffry Wahlen, Malcolm N. Means, and Virginia Ponder of Ausley McMullen, Tallahassee, Florida,

for Appellee Tampa Electric Company