**LADY J. LINGERIE, INC.,
etc., et al., Plaintiffs,**

**v.**

**CITY OF JACKSONVILLE, etc.,
Defendant.(Two Cases).**

**Milton R. HOWARD, et al., Plaintiffs,**

**v.**

**CITY OF JACKSONVILLE,
etc., Defendant.**

**Nos. 95–181–Civ–J–20A, 95–434–Civ–J–20A and 95–1005–Civ–J–20A.**

United States District Court,
M.D. Florida,
Jacksonville Division.

Aug. 26, 1997.

Steven M. Youngelson, Law Office of Steven M. Youngelson, Altanta, GA, Gary S. Edinger, Law Office of Gary Edinger, Gainesville, FL, for plaintiffs.

Michael D. Crowell, Jacksonville, FL, pro se.

Tracey I. Arpen, Jr., Stephen Michael Durden, Bruce Dean Page, Sr., David K. Ray, Clay Meux, Steven E. Rohan, Sharon R. Parks, General Counsel's Office, Jacksonville, FL, for defendant.

### MEMORANDUM OPINION

SCHLESINGER, District Judge.

This is an action for declaratory and injunctive relief and damages challenging the constitutionality of city zoning ordinances placing certain restrictions on adult entertainment establishments. The stated purpose of the ordinances is to combat the undesirable secondary effects of nude dancing: prostitution, public masturbation, lewd and lascivious conduct, and sexual harassment. Most of the issues in this case can be resolved by the various motions for summary judgment/dismissal that have been filed in this case. The remaining factual issues were heard in a one-day trial in this cause held before the undersigned on July 31, 1997. For purposes of trial, the Court consolidated Case No. 95–1005–Civ–J–20A with the already consolidated case of 95–181–Civ–J–20A/25–434–Civ–J–20A. The Court first will resolve the issues submitted in the parties' dispositive motions. Then, based on the testimony and evidence received during trial, and the applicable legal standards, the Court will make findings of fact and conclusions of law on the remaining issues, as required by Rule 52(a) of the Federal Rules of Civil Procedure.

1. Defined in Section 150.103(a).

2. Defined in Section 150.103(c).

The motions presently before the Court are:

*Case No. 95–181–Civ–J–20A/95–434–Civ–J–20A:*

(1) Defendant's Motion for Judgment of Dismissal with Prejudice as to Plaintiffs Amy Watson and Michael Crowell (Doc. No. 56);

(2) Defendant's Motion for Partial Summary Judgment as to Enactment Procedures for Challenged City Ordinances (Doc. No. 57) and Plaintiffs' Response thereto (Doc. No. 59);

(3) Plaintiffs' Motion for Partial Summary Judgment as to the Issue of Availability of Alternate Sites, Amortization, License Disclosures and Disparate Sentencing (Doc. No. 78) and Defendant's response thereto (Doc. No. 93);

(4) Defendant's Motion for Summary Judgment of Dismissal for Lack of Standing (Doc. No. 82) and Plaintiffs' response (Doc. No. 92);

(5) Defendant's Motion to Dismiss Plaintiff Gregory A. King for Lack of Standing (Doc. No. 84) and Plaintiffs' response (Doc. No. 91);

(6) Defendant's Motion for Summary Judgment (Doc. No. 85) and Plaintiffs' response (Doc. No 90);

*Case No. 95–1005–Civ–J–20A:*

(7) Plaintiffs' Motion for Partial Summary Judgment as to the Issues of Procedural Safeguards for Zoning Exceptions, the Availability of Alternate Sites and Amortization (Doc. No. 20) and Defendants' response (Doc. No. 25); and

(8) Defendant's Motion for Summary Judgment (Doc. No. 26) and Plaintiffs' Response (Doc. No. 32).

## I. BACKGROUND

On November 16, 1994, the City of Jacksonville enacted Ordinance 94–190–651 (Ordinance I). This Ordinance attempted to regulate adult bookstores,[1] adult entertainment establishments,[2] and adult motion picture theaters [3] within Jacksonville by requiring

3. Defined in Section 150.103(f).

operators of such facilities to obtain a license from the Sheriff and to provide certain zoning, health, safety, and fire protection standards. Plaintiffs in this action are lingerie shops that contain non-obscene nude dancing (Plaintiffs also are referred to as "Lingerie Shops" or "Lingerie Shop" Plaintiffs). The Lingerie Shops are classified as adult entertainment establishments under the Ordinance. Following passage of the Ordinance, the Lingerie Shops closed their businesses. The Lingerie Shop Plaintiffs filed their Verified Petition (complaint) on February 28, 1995, seeking temporary and permanent injunctive relief, damages for violation of their civil rights, and a declaratory judgment declaring the Ordinance is void, invalid, and unconstitutional on several grounds. On March 10, 1995, this Court granted in part Plaintiffs' motion for preliminary injunction, enjoining Defendant and its agents, officers, employees, and persons acting under its direction and control from enforcing the licensing, suspension, and revocation provisions and zoning requirements found in Ordinance 94–190–651, since the Court found Sections 150.107, 150.207, 150.212, and 656.725 to be defective. *See* Preliminary Injunction Order (Doc. No. 18 in Case No. 95–181–Civ–J–20). This injunction did not affect any other Ordinance or other portions of Ordinance 94–190–651 except for those sections expressly enjoined. On March 28, 1995, the City of Jacksonville adopted a subsequent ordinance, Ordinance 95–307–109 (Ordinance II), which partially amended Ordinance I and adopted new and modified provisions. The Lingerie Shop Plaintiffs filed a second complaint and sought to preliminarily enjoin Ordinance II (Doc. No. 3 in Case No. 95–434–Civ–J–20) as well as Ordinance I. After reviewing the new Ordinance, this Court denied the Lingerie Shops' motion for preliminary injunction of Ordinance II and dissolved the preliminary injunction of Ordinance I. The Court also consolidated the two cases. Doc. No. 32 in Case No. 95–181–Civ–J–20; Doc. No. 23 in Case No. 95–434–Civ–J–20. On June 19, 1996, this Court granted in part Defendant's motion for partial summary judgment and dismissed certain of the Lingerie Shop Plaintiffs' claims.[4]

Plaintiff Milton R. Howard and Emro Corporation, d/b/a J.R.'s Lounge (J.R.'s), filed its Petition for Injunctive Relief, Declaratory Judgment and Damages on October 11, 1996, challenging the constitutionality of the Ordinances. Plaintiff's business, J.R.'s Lounge provides nude entertainment by live dancers, and also is classified as an adult business according to the Ordinances. J.R.'s is located in a CCG–2 zone, an area of the City that requires a special zoning exception in order to allow nude dancing on the premises. According to the complaint, J.R.'s applied for the zoning exception in December 1, 1994, which was initially granted by the Jacksonville Planning Commission on March 2, 1995. However, on May 23, 1995, the zoning exception was revoked by the City Council, and this lawsuit ensued.

## II. DISPOSITIVE MOTIONS

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the initial burden of showing the Court, by reference to materials on file that there are no genuine issues of material fact that should be decided at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Clark v. Coats & Clark, Inc.,* 929 F.2d 604 (11th Cir. 1991). A moving party discharges its burden on a motion for summary judgment by "showing" or "pointing out" to the Court there is an absence of evidence to support the non-moving party's case. *Celotex,* 477 U.S. at 325, 106 S.Ct. at 2553–54. Rule 56 permits the moving party to discharge its burden with or without supporting affidavits and to move for summary judgment on the case as a whole or on any claim. *Id.* When a moving party has discharged its burden, the

---

4. The Court dismissed Plaintiffs' claims regarding the following provisions of Ordinance 94–190–651: Sections 50.107, 150.222, 150.303, 150.304(d), 150.403, 150.407, and 150.501(a)(3); Plaintiffs' challenge under the Florida Constitution to privacy rights of patrons and performers/models in Sections 150.222, 150.301(*o*), 150.301(p), 150.303(3), and 150.303; and Plaintiffs' claims under Fla. Stat. § 383.015 and Chapter 800. *See* Doc. No. 60.

nonmoving party must then "go beyond the pleadings," and by its own affidavits, or by "depositions, answers to interrogatories, and admissions on file," designate specific facts showing that there is a genuine issue for trial. *Id.* at 324, 106 S.Ct. at 2553.

In determining whether the moving party has met its burden of establishing there is no genuine issue as to any material fact and it is entitled to judgment as a matter of law, the Court must draw inferences from the evidence in the light most favorable to the nonmovant, *Key West Harbour Development Corp. v. City of Key West,* 987 F.2d 723, 726 (11th Cir.1993), and resolve all reasonable doubts in that party's favor. *Spence v. Zimmerman,* 873 F.2d 256, 257 (11th Cir.1989). The nonmovant need not be given the benefit of every inference, but only of every "reasonable" inference. *Brown v. City of Clewiston,* 848 F.2d 1534, 1540 n. 12 (11th Cir.1988). The Eleventh Circuit has explained the reasonableness standard:

> In deciding whether an inference is reasonable, the Court must "cull the universe of possible inferences from the facts established by weighing each against the abstract standard of reasonableness." [citation omitted]. The opposing party's inferences need not be more probable than those inferences in favor of the movant to create a factual dispute, so long as they reasonably may be drawn from the facts. When more than one inference reasonably can be drawn, it is for the trier of fact to determine the proper one.

*WSB–TV v. Lee,* 842 F.2d 1266, 1270 (11th Cir.1988).

Thus, if a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant the summary judgment motion. *Augusta Iron and Steel Works v. Employers Insurance of Wausau,* 835 F.2d 855, 856 (11th Cir.1988). It must be emphasized that the mere existence of *some* alleged factual dispute will not defeat an otherwise properly supported summary judgement motion. Rather, "the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A dispute

about a material fact is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248, 106 S.Ct. at 2510. The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52, 106 S.Ct. at 2511–12.

### A. Lady Lingerie Plaintiffs

#### (1) Dismissal of Plaintiffs Amy Watson and Michael Crowell

Defendant filed two separate motions for Judgment of Dismissal with Prejudice as to Plaintiffs Amy Watson and Michael Crowell (Doc. Nos. 47 & 56), to which the Court ordered consolidated and directed Plaintiffs, who are appearing *pro se,* to file responses (Doc. No. 60). The Court informed Plaintiffs:

> the disposition of the consolidated motion for judgment of dismissal (Doc. Nos. 47 and 56) may result in the dismissal of their case with prejudice without any further proceedings. It would be in the best interest of Plaintiffs to respond to the consolidated motion within **ten (10) days** of the date of this Order.

No response was filed by either Plaintiff. Accordingly, Defendant's Motion for Judgment of Dismissal with Prejudice as to Plaintiffs Amy Watson and Michael Crowell (Doc. No. 56) is **GRANTED.** This action as to Plaintiffs Amy Watson and Michael Crowell is hereby **DISMISSED WITH PREJUDICE.** *See* Local Rule 3.10.

#### (2) Enactment Procedures/Due Process Claim

Defendant moves for partial summary judgment on Plaintiffs' complaint with respect to Plaintiff's allegation that the City did not follow the procedural requirements set forth in Florida Statutes, § 166.041(3)(c), in the enactment of the two Ordinances.

It is undisputed that the two Ordinances, 94–190–651 and 95–307–109, were not enacted in strict accordance with the procedures set forth in Fla. Stat. § 166.041(3)(c)2. Ordinance 94–190–651 was advertised 14 days in advance of the public hearing, rather than

the 5 days specified by section 166.041(3)(c)(2). Ordinance 95–307–109 was enacted as an emergency ordinance and did not comply with any of the requirements of § 166.041(3)(c)(2).

Under Florida law, strict compliance with the notice requirements of the state statute is a jurisdictional and mandatory prerequisite to the valid enactment of a zoning measure. *Ellison v. City of Fort Lauderdale,* 183 So.2d 193 (Fla.1966). Ordinances which do not comply with the notice requirements are void. *Daytona Leisure Corp. v. Daytona Beach,* 539 So.2d 597, 599 (Fla.App.1989). However, § 166.041(3)(c)(2) applies only to ordinances which substantially affect the use of land. *T.J.R. Holding Co. v. Alachua County,* 617 So.2d 798 (Fla.App. 1993). In *T.J.R.,* the ordinance regulated only conduct, prohibiting nudity and sexual conduct in establishments that served alcohol. The Florida court concluded that the ordinance did not affect the owner's use of the land and so it did not have to comply with the formalities required for a land-use ordinance. On the other hand, *Daytona Leisure* involved a "classic zoning ordinance," which prohibited the sale of alcohol in designated areas. *Id., cited in 3299 N. Federal Highway, Inc. v. Board of County Commissioners of Broward County,* 646 So.2d 215, 222 (Fla.App.1994). The court concluded that the failure to properly notice the ordinance prior to adoption rendered it unenforceable.

Somewhere "in the middle" of the above cases is the ordinance in *3299 N. Federal Highway,* which regulates both conduct and the use of land. In that case, two adult night clubs which featured nude dancing and three dancers from one of the clubs filed an action against Broward County to enjoin it from enforcing its newly adopted "Broward Adult Entertainment Code." One of the issues was whether the county was required to comply with the notice and public hearing requirements under Florida law. The trial court held that because the law was not a zoning or land-use ordinance, it was not subject to those requirements. The Florida district court noted that the ordinance regulated activities that "are quite clearly 'conduct'—touching, lap dancing, distances between performers and patrons—[but that] it also re-

quires that affected businesses meet structural requirements—partitions, width of doorways, distance between seats and stage, etc." *Id.* The court analyzed the legislative history of the notice/hearing statute, which is found "merely persuasive rather than controlling," and concluded that the structural requirements of the ordinance do not substantially affect use of the land, and therefore would not be subject to strict enactment requirements. *Id.* at 223.

Ordinances that set minimum distance requirements or change setback and height restrictions have been found to "substantially affect land use." *Daytona Beach,* 539 So.2d at 597 (minimum distance between business selling alcohol and residential area); *City of Miami Beach v. State,* 108 So.2d 614 (Fla. 3d DCA 1959) (changing setback and height restrictions on new buildings). The City does not contest that certain portions of the Ordinances in this case substantially affect the use of land, such as the setback requirements and minimum distance requirements between adult entertainment businesses and churches, schools, and other adult businesses. *See e.g.,* Ordinance 94–190–651, § 656.1103(a)(1)-(4). However, the City argues that the provisions of the Ordinances that clearly affect conduct and interior structural requirements do not have to be in compliance with the notice and hearing requirements of section 166.041(3)(c)(2).

As an initial matter, the Court rejects Defendant's argument that Plaintiffs do not have standing to challenge the enactment procedures. Any "affected resident, citizen or property owner" may challenge an ordinance as void because it is not enacted in accordance with law. *Renard v. Dade County,* 261 So.2d 832, 838 (Fla.1972). "Anyone against whom the void ordinance is asserted is affected." *Bhoola v. City of St. Augustine Beach,* 588 So.2d 666, 667 (Fla.App.1991).

Nonetheless, the Court finds that the enactment procedures as to Ordinance 94–190–651 were complied with. The only potential defect Plaintiffs point to—advertising the second public hearing 14 days in advance of the hearing, rather than the 5 days specified in section 166.041(3)(c)(2)—does not render the Ordinance void for failure to comply

with the notice provisions of the statute. The undisputed evidence demonstrates that the City complied with each of the *minimum* requirements of section 166.041(3)(c)(2). *See* Exhibit A to the City's Memorandum in Support of its Motion for Partial Summary Judgment as to Enactment Procedures (Doc. No. 58). Section 166.041(8) provides that "[t]he notice procedures required by this section are established as *minimum* notice procedures." *Id.* (emphasis added). The statute does not require exactness as to the number of days. The five day requirement is a minimum requirement. Plaintiffs have cited to and the Court has found no cases which indicate that extra notice violates the statute. Therefore, the Court finds that the fourteen days notice complies with the requirements of § 166.041(3)(c)(2), and Defendant's Motion for Partial Summary Judgment as to Enactment Procedures of Ordinance 94–190–651 is **GRANTED.**

■ The Court also agrees that only the portions of Ordinance 95–307–109 that "substantially affects the use of the land" have to comply with the § 166.041(3)(c)(2) notice and hearing requirements. Ordinance 95–307–109 repealed section 656.725, regarding amortization of adult entertainment facilities, and created section 656.1109, which allows conditional commencement of a facility prior to obtaining an exception. Section 656.725 previously was enjoined by this Court. *See* Order Granting Preliminary Injunction, Doc. No. 18 in Case No. 95–181–Civ–J–20. Therefore, the Court agrees with Defendant that the City was not required to comply with the notice requirements for an enjoined ordinance. In addition, Plaintiffs have not demonstrated that they were *injured* by the *repeal* of an ordinance which they claimed in another lawsuit violates their constitutional rights. Consequently, they do not have standing to challenge the enactment of section 656.725. Moreover, section 656.1109, which guarantees the right to operate a facility while awaiting a decision on an application for an exception, is not an ordinance which substantially affects the use of land. Thus, the City did not have to comply with the notice requirements of § 166.041(3)(c)(2).

■ Finally, the Court rejects Plaintiffs' contention that Defendant's failure to follow enactment procedures, if any, is a violation of procedural due process. Failure to follow state procedures is not in and of itself a violation of the federal Constitution. *Harris v. Birmingham Board of Education,* 817 F.2d 1525, 1527 (11th Cir.1987). In *Harris,* the Eleventh Circuit rejected Harris' claim that his procedural due process rights were violated when the Board of Education failed to follow state procedures regarding notice. The court stated:

> Even if the notice in this case is insufficient to satisfy the state statute, the state statute does not define the process under the federal Constitution. Therefore, even if the state statute has been violated, that does not prove a violation of a federal constitutional rights.... Although the state statutory notice requirement is stated in mandatory language, it is a purely procedural requirement and *not a substantive predicate to termination which gives Harris a protected liberty or property interest in receiving notice....*

*Id.* (emphasis supplied). In this case, for the reasons discussed herein, the City did not violate federal due process in its enactment of either ordinance. Accordingly, Plaintiffs' request for declaratory and injunctive relief on its due process claim is **DENIED;** and Defendant's Motion for Partial Summary Judgment as to Enactment Procedures of Ordinances 94–190–651 and 95–307–109 is **GRANTED.**

### (3) Lack of Standing

Most of the arguments raised in Defendant's Motion for Summary Judgment of Dismissal for Lack of Standing (Doc. No. 82) previously have been considered and rejected by this Court. *See* Order of July 13, 1995 in Case No. 96–434–Civ–J–20 (denying Defendant's Motion to Dismiss for Lack of Standing) and Doc. No. 5 in same case (Defendant's Motion); Order of June 19, 1996 in consolidated case (denying Defendant's Defendant's Motion for Summary Judgment as to Constitutionality of Cumulative Effect of Challenged Ordinance (Doc. No. 48)). The remaining arguments propounded by Defendant are without merit. Accordingly, Defendant's Motion for Summary Judgment of Dismissal for Lack of Standing (Doc. No. 82) is **DENIED.**

### (4) Dismissal of Plaintiff Gregory A. King for Lack of Standing

In light of Plaintiffs' filing its First Amended Complaint on April 14, 1997 (Doc. No. 102) adding as Plaintiffs the two corporations which actually own the lingerie businesses in question and in which Plaintiff Gregory King holds stock, and further defining King's interest in the businesses, which was consented to by Defendant, Defendant's Motion to Dismiss Plaintiff Gregory A. King for Lack of Standing (Doc. No. 84) is **MOOT**.

### (5) Nudity as a Sales Promotion

The City moves for summary judgment contending that nudity, used as a sales promotion, is commercial speech and therefore is not protected by the First Amendment, citing *Florida Bar v. Went For It, Inc.*, 515 U.S. 618, 115 S.Ct. 2371, 132 L.Ed.2d 541 (1995). That case involved lawyer advertising, which is considered "pure commercial advertising." *Id.* at 634–35, 115 S.Ct. at 2381. The Court noted that commercial speech enjoys a limited measure of protection under the First Amendment, and analyzed the case under the "intermediate scrutiny" standard. *Id.* Defendant argues that the nude dancing at Plaintiffs' facilities was being used to market Plaintiffs' lingerie. Therefore, the argument goes, it was outside the protection of the First Amendment. Plaintiffs respond that Defendant has misstated the facts "in an attempt to downplay the First Amendment expressive nature of the entertainment provided." Response at 2 (Doc. No. 90).

█ The evidence supports Plaintiffs' contention. Although Plaintiffs testified that the performers did not engage in a typical cabaret performance, i.e., "nude dancing in what the industry considers nude dancing, which is stages, flashing lights, and very loud music and the absence of lingerie [where the performers] stand ... on the stage nude," the testimony was that models were engaged in a type of expressive performance akin to a more traditional striptease. Deposition of Gregory King at 77–78. This Court previously has noted that "nude dancing is expressive conduct entitled to some degree of First Amendment protection .... [if only] 'within the outer perimeter of the First Amendment.'" Order of June 19, 1996, granting in part and denying in part motions for summary judgment (Doc. No. 48 at 9) (1996 Summary Judgment Order) (citing *Redner v. Dean*, 29 F.3d 1495, 1499 (11th Cir.1994), *cert. denied*, 514 U.S. 1066, 115 S.Ct. 1697, 131 L.Ed.2d 560 (1995); *Barnes v. Glen Theatre, Inc.*, 501 U.S. 560, 111 S.Ct. 2456, 115 L.Ed.2d 504 (1991)). Therefore, the City's Motion for Summary Judgment (Doc. No. 85) is **DENIED**.

### (6) Remaining Renton Factors

In the its 1996 Summary Judgment Order, the Court found that the Ordinances in question satisfied the first two prongs of the test established in *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986), in that the Ordinances were (1) "content-neutral" time, place and manner regulations, which (2) serve the substantial governmental interest of combating the undesirable secondary effects of nude dancing: in this case, restricting or regulating prostitution, public masturbation, sexual harassment or discrimination. *See* 1996 Summary Judgment Order at 10–11; *Renton*, 475 U.S. at 48, 106 S.Ct. at 929; *FW/PBS v. City of Dallas*, 493 U.S. 215, 222, 236, 110 S.Ct. 596, 602–03, 610, 107 L.Ed.2d 603 (1990); *TK's Video, Inc. v. Denton County, Texas*, 24 F.3d 705, 707 (5th Cir.1994). In addition to serving a substantial government interest, the regulation in question must allow for reasonable alternative avenues of communication and must be narrowly tailored to serve the government interest at issue. *Renton*, 475 U.S. at 50, 106 S.Ct. at 930; *International Eateries of America, Inc. v. Broward County*, 941 F.2d 1157, 1162 (11th Cir.1991), *cert. denied*, 503 U.S. 920, 112 S.Ct. 1294, 117 L.Ed.2d 517 (1992).

#### a. Reasonable Alternative Avenues of Communication

In its previous Summary Judgment Order (Doc. No. 48), the Court denied summary judgment because there was a factual issue remaining whether the Ordinance will allow reasonable alternative avenues of communication as Plaintiffs' expert had not completed his study of available sites in the City. Order at 15. The Court is required to make find-

ings of fact with respect to the actual number of potential sites available for adult businesses, and whether that number will allow reasonable alternative avenues of communication to withstand constitutional scrutiny. *See Renton, supra; International Eateries,* 941 F.2d at 1165, citing *Walnut Properties, Inc. v. City of Whittier,* 861 F.2d 1102, 1108–09 (9th Cir.1988), *cert. denied,* 490 U.S. 1006, 109 S.Ct. 1641, 104 L.Ed.2d 157 (1989).

Since that time, both Plaintiffs and Defendant have presented expert testimony in the form of affidavits concerning studies of available sites.[5] The City of Jacksonville permits adult uses as a matter of right in the CCBD (Commercial, Central Business District) zone and as a special exception in the CCG–2 (Commercial, Community/General, 2) zoning district. City of Jacksonville Zoning Code, § 656.1102. In addition, in either zone, adult businesses must meet the set-back requirements of section 656.1103, which precludes the location of an adult business:

(1) within 500 feet from residences;

(2) within 1,000 feet from schools, churches and other adult uses; and

(3) within 500 feet from bars.

Section 656.1103(a)(1)-(4) (distance requirements).

The parties agree that there are two (2) potential sites available in the CCBD zone that would accommodate Plaintiffs' businesses and comply with the distance requirements of the zoning Ordinances. *See* Affidavit of Thad Crowe (Crowe Affidavit), Doc. No. 94 at 5 (finding that there are two parcels of 140 in the district where adult uses would allowed "by right"—i.e., where the distance requirements do not affect the parcels, which is 1.4% of all CCBD parcels); Affidavit of Robert Bruce McLaughlin (McLaughlin Affidavit), Doc. No. 80 at 13.

However, the parties disagree on the number of potential sites available in the CCG–2 zone, which requires adult entertainment establishments to obtain a special use permit. Defendant's expert averred that within the City of Jacksonville[6] "a survey of 734 CCG–2

zoned parcels outside of the CCBD area revealed that 93 were not affected by the adult use distance requirements. This represents 12.7% of all CCG–2 zoned parcels." Crowe Affidavit at 6. Plaintiffs' expert, however, did not undertake the "detailed research" in the CCG–2 zone as he did in the CCBD zone, which he only "spot checked." McLaughlin Affidavit at 8. The reason McLaughlin gave for performing only a spot-check in the CCG–2 zone is that he was of the opinion that the special use permit in the CCG–2 zones had the "demonstrable effect" of precluding adult uses in those zones. *Id.* at 7. McLaughlin arrived at this conclusion for the following reasons: (1) all except one of the adult entertainment establishments that previously operated in the CCG–2 zones were forced to close as a result of the Ordinances; (2) one ongoing adult business located in the CCG–2 zone, J.R.'s, applied for and was denied a special exception; (3) given that the initial approval of the special exception for J.R.'s by the governmental agency, the Jacksonville Planning Commission, and the subsequent denial of the permit by the "political body," the Jacksonville City Commission, "it is reasonable to conclude that special exceptions for adult businesses are disfavored by the City Commission and will not be granted as a matter of course;" (4) adult businesses will avoid locating in zones which require special exception approval by a government body; and (5) as a practical matter, the application of the Ordinances have precluded the opening of other adult businesses in the CCG–2 zone. *Id.* at 7–8.

■ Plaintiffs do not appear to contend that a total of 95 potentially available sites (2 in the CCBD area plus 93 in the CCG–2 zone) would not pass constitutional muster under *Renton* and *International Eateries.* After reviewing the relevant case law, the Court finds as a matter of law that 95 sites allow Plaintiffs "reasonable avenues of alternative communication" under *Renton.* The Court makes no determination of what the

---

5. Additional evidence on the issue also was presented at the July 31, 1997, bench trial, specifically as the issue related to the 1000 square feet room requirement of the Ordinance. The Court will discuss that evidence later in this Opinion.

6. The Court rejects Defendant's argument that the Court can consider municipalities outside the Jacksonville/Duval County area. *See Centerfold Club, Inc. v. City of St. Petersburg,* 969 F.Supp. 1288, 1306–07 (M.D.Fla.1997).

"minimum" number of sites would be in order to pass constitutional scrutiny, because the Court need not reach that issue today. In the case at hand, 95 sites is more than adequate to pass constitutional muster. *See International Eateries*, 941 F.2d at 1165 (twenty-six sites allowed for reasonable alternative avenues of communication); *International Food & Beverage Systems v. City of Fort Lauderdale*, 794 F.2d 1520, 1526 (11th Cir.1986) (twenty-two sites adequate), *aff'd*, 838 F.2d 1220 (11th Cir.1988); *T–Marc, Inc. v. Pinellas County*, 804 F.Supp. 1500, 1504 (M.D.Fla.1992) (noting that 123 available sites were far more than the number that several courts have held are adequate); *Southern Entertainment Co. of Fla., Inc. v. City of Boynton Beach*, 736 F.Supp. 1094, 1101 (S.D.Fla.1990) (eleven locations sufficient); *Function Junction, Inc. v. City of Daytona Beach*, 705 F.Supp. 544, 552 (M.D.Fla.1988) (twelve sites adequate). *Cf. Centerfold Club, Inc. v. City of St. Petersburg*, 969 F.Supp. 1288, 1304–05 (M.D.Fla. 1997) (finding nineteen sites inadequate, which is a ratio of one site per 12,565 persons).[7]

Plaintiffs argue, however, that the availability of sites in the CCG–2 zone by special exception is illusory, because of the unbridled authority granted the decision maker. Therefore, Plaintiffs contend that there are only two sites in the entire City of Jacksonville on which they can locate the fifteen businesses that previously operated prior to enactment of the Ordinances, and any future such businesses.

There is no question that if only two sites were available for adult use in a city the size of Jacksonville, it would be insufficient to meet the requirements of *Renton*. Defendants do not dispute that contention, but argue that an additional 93 sites are available in the CCG–2 zone. It is also axiomatic that if a conditional use ordinance grants the governmental body unbridled discretion, it will be held unconstitutional. *Shuttlesworth v. Birmingham*, 394 U.S. 147, 150, 89 S.Ct. 935, 938, 22 L.Ed.2d 162 (1969) (noting that "many decisions of this Court over the last 30 years [have held that] a law subjecting the exercise of First Amendment freedoms to the prior restraint of a license, without narrow, objective, and definite standards to guide the licensing authority, is unconstitutional"). Therefore, the Court must examine the special use exception in this case and determine whether it grants the City "unbridled and absolute power," as the *Shuttlesworth* Court found in the ordinance in question. *Id.*

Section 656.131(c), Jacksonville Code, provides:

(1) The Commission shall issue an order to grant the exception only if it finds from a preponderance of the evidence of record presented that the proposed use meets, to the extent applicable, the following standards and criteria:

(i) Will be consistent with the Comprehensive Plan, including any subsequent plan adopted by the Council pursuant thereto;

(ii) Will be compatible with the existing contiguous uses or zoning and compatible with the general character of the area, considering population density, design, scale and orientation of structures to the area, property values, and existing similar uses or zoning;

(iii) Will not have an environmental impact inconsistent with the health safety and welfare of the community;

(iv) Will not have a detrimental effect on vehicular or pedestrian traffic, or parking conditions, and will not result in the generation or creation of traffic inconsistent with the health, safety and welfare of the community;

(v) Will not have a detrimental effect on the future development of contiguous prop-

---

**7.** The Court disagrees with the methodology advanced by Plaintiff's expert, which the Court notes is the same expert in this case, and accepted by the court in *Centerfold Club*, equating the number of sites to the population. In the cases cited therein, those courts did not consider the ratio of population to number of potential sites when the issues were decided, therefore, no "minimum" ratio was decided by those courts that would pass constitutional muster. Also, in *Centerfold Club*, the ratio in that case appeared to be considerably lower than in the other cases. In this case, the number of sites is considerably *higher* than those approved by other courts. Therefore, that case is distinguishable from the instant case, and the Court does not find its authority to be persuasive.

erties or the general area, according to the Comprehensive Plan, including any subsequent amendment to the plan adopted by the Council;

(vi) Will not result in the creation of objectionable or excessive noise, lights, vibrations, fumes, odors, dust or physical activities taking into account existing uses or zoning in the vicinity;

(vii) Will not overburden existing public services and facilities;

(viii) Will be sufficiently accessible to permit entry onto the property by fire, police, rescue and other services; and

(ix) Will be consistent with the definition of a zoning exception, and will meet the standards and criteria of the zoning classification in which such use is proposed to be located, and all other requirements for such particular use set forth elsewhere in the Zoning Code, or otherwise adopted by the Planning Commission.

(2) In issuing its order to grant a zoning exception as provided in the Zoning Code, the Commission may place more restrictive requirements and conditions on applications than are provided in the Zoning Code....

*Id.* Exhibit "D" to Petition for Injunctive Relief, Declaratory Judgment and Damages, Doc. No. 1 in Case No. 95–1005–Civ–J–20.

Plaintiffs contend that this same language has been declared unconstitutional in every challenge brought against comparable legislation. The Court has carefully reviewed the cases cited by Plaintiffs and finds most of those cases to be distinguishable on the facts. In *Shuttlesworth,* the Supreme Court struck down as unconstitutional an ordinance making it an offense to participate in any parade or procession or other public demonstration" without first obtaining a permit from the City Commission. The ordinance provided that the government official could refuse to issue the permit if the proposed use threatened "the public welfare, peace, safety, health, decency, good order, morals, or convenience" of the community. The Court held that the ordinance vested "virtually unbridled and absolute power" in the City Commission. Similarly, in *3570 East Foothill Blvd., Inc. v. City of Pasadena,* 912 F.Supp. 1268, 1275–76 (C.D.Cal.1996), the court struck down conditional use permit ordi-

nances which allowed for the sale of alcohol and the provision of arcade games, billiards, and shuffleboard as part of a restaurant use. The city could deny a permit if the proposed use would be "detrimental to the public health, safety, or welfare of persons residing or working adjacent to the neighborhood of such use, or injurious to properties or improvements in the vicinity." The court noted that the language was "almost identical to the language struck down as unconstitutional in *Shuttlesworth,*" and in another California district court case, *Dease v. City of Anaheim,* 826 F.Supp. 336 (C.D.Cal.1993), and invalidated the ordinances as unconstitutional prior restraints on speech. *Id.* In each of those cases, the language concerning the health and welfare of the community was not tied to anything in particular. In contrast, the language of the special exception in this case requires that the zoning use "[w]ill not have an *environmental impact* inconsistent with the health, safety and welfare of the community...." § 656.131(c)(1)(iii) (emphasis supplied). Such language is specifically tied to the environment and therefore does not suffer from the vagueness and potential for misuse that the courts in the other cases faced.

Plaintiffs also cite the case of *Santa Fe Springs Realty Corp. v. City of Westminster,* 906 F.Supp. 1341, 1367 (C.D.Cal.1995), which declared invalid a requirement that the proposed use be consistent with the City Comprehensive Plan. In that case, however, unlike the case at hand, at the time the lawsuit was bought the Comprehensive Plan did not exist. In this case, the City has an existing plan. Requiring the use to be consistent with an existing plan is not problematic. *See* § 656.131(c)(1)(i). There exists "definite and objective standards" by which the City can make its decision whether to grant a special exception. *Cf. Dease,* 826 F.Supp. at 344.

■ It is well settled that the government may legitimately exercise its police powers to advance its aesthetic interests. *Members of the City Council of the City of Los Angeles v. Taxpayers for Vincent,* 466 U.S. 789, 805, 104 S.Ct. 2118, 2129, 80 L.Ed.2d 772 (1984). Both traffic safety and aesthetics are substantial governmental

goals. *See id.* at 811, n. 28, 104 S.Ct. at 2132, n. 28. Therefore, the City's requirements, for example, that the use be "compatible with the existing contiguous uses or zoning and compatible with the general character of the area, considering population density, design scale and orientation of structures to the area," § 656.131(c)(1)(ii), and that the uses will not have a "detrimental effect on vehicular or pedestrian traffic ...", § 656.131(c)(1)(iv), are valid governmental interests and do not vest the City with unbridled discretion. Likewise, most of the other criteria in § 656.131(c) set forth permissible bases for land use restrictions. *See e.g., Greenbriar, Ltd. v. City of Alabaster,* 881 F.2d 1570, 1580 & n. 20 (concern about effect of proposed development on traffic, on congestion, on surrounding property values, on demand for city services and on other aspects of the general welfare are permissible bases for land use restrictions); *Grosz v. City of Miami Beach,* 721 F.2d 729, 738 (11th Cir.1983) (recognizing zoning interests of reduced traffic, noise, and litter), *cert. denied,* 469 U.S. 827, 105 S.Ct. 108, 83 L.Ed.2d 52 (1984).

▪ With only one exception, the Court finds as a matter of law that each of the provisions in § 656.131(c) pass constitutional scrutiny. The exception is § 656.131(c)(2), which provides:

> In issuing its order to grant a zoning exception as provided in the Zoning Code, the Commission may place more restrictive requirements and conditions on applications than are provided in the Zoning Code....

The Court finds that provision, which allows the Commission to place "more restrictive requirements and conditions on applications" than are provided in the Zoning Code does not provide the required "narrow, objective and definite standards to guide the licensing authority," and, on the contrary, grants the Commission "unbridled discretion" to make decisions on any basis at all, including an impermissible basis, such as content-based regulation of speech. *See Shuttlesworth,* 394 U.S. at 150–51, 89 S.Ct. at 938–39; *Dease,* 826 F.Supp. at 343–44. Therefore, the Court must determine whether the unconstitutional provision can be severed from the ordi-

nances, or, whether the entire adult business regulation scheme must be invalidated.

▪ "The standard for determining the severability of an unconstitutional provision is well established: Unless it is evident that the Legislature would not have enacted those provisions which are within its power, independently of that which is not, the invalid part may be dropped if what is left is fully operative as law." *Alaska Airlines, Inc. v. Brock,* 480 U.S. 678, 684, 107 S.Ct. 1476, 1480, 94 L.Ed.2d 661 (1987); *3570 Foothill Blvd,* 912 F.Supp. at 1280–82. In this case, is it clear that without § 656.131(c)(2), the adult use ordinance is "fully operative." Accordingly, severing the offensive provision, the Court finds that a total of 95 sites are potentially available, which allow Plaintiffs reasonable avenues of communication under *Renton.* However, Plaintiff's Motion for Partial Summary Judgment on the issue of availability of alternate sites is **GRANTED IN PART,** in that the Court declares § 656.131(c)(2) of the Jacksonville City Code to be unconstitutional, and will sever that provision from the Ordinance.

### b. *Narrowly Tailored to Further City's Interest*

▪ Having found that the City's zoning Ordinances further the City's interest in combating the undesirable secondary effects of adult entertainment establishments, the Court must next address whether the Ordinances are narrowly tailored to further that interest. In a similar case upholding distance ordinances, the Eleventh Circuit held that "[s]o long as the distance requirements are not greater than necessary to prevent the secondary effects, they are narrowly tailored to serve their purpose." *International Eateries,* 941 F.2d at 1163. In that case, similar to the instant cases, the ordinances prohibited location of an adult nightclub within 500 feet of a residentially zoned district or 1000 feet of a church. Noting that the distances required by the ordinances were no farther than those approved by the Court in *Renton,* the court held the ordinances were narrowly tailored to serve their purpose of combating the secondary effects of adult entertainment establishments. *Id.* at 1165. In this case, as in *International*

*Eateries* and *Renton,* the Ordinance prohibits adult businesses from locating within 500 feet of residences, within 1,000 feet from schools, churches and other adult uses, and within 500 feet from bars. The Court finds those distances, which are no greater than those approved by the courts in *Renton* and *International Eateries,* and serve the substantial government interest of combating the secondary effects of nude entertainment, are narrowly tailored to achieve that objective.

### (7) Amortization Period

Plaintiffs move for partial summary judgment for the failure of the revised Ordinance to provide a reasonable amortization period. The first of the two Ordinances provided for an amortization period of approximately four months before the zoning requirements of the Ordinance were to go into effect. Ord. 94–190–651 § 656.725. However, the Court declared the licensing and zoning provisions of the original Ordinance unconstitutional. Thereafter, the City enacted a new Ordinance which expressly repealed the four-month amortization period in the original Ordinance. Plaintiffs contend "the new Ordinance forced each of these Plaintiffs to close their businesses." Motion at 17.

The newly enacted Ordinance 95–307–109 lacks either "grandfathering" allowances or a reasonable amortization period. Therefore, the amended Ordinance demanded immediate compliance with the zoning and physical requirements of the law, forcing Plaintiffs to close their businesses. The City's deprivation of Plaintiffs' property without allowing Plaintiffs a reasonable opportunity to recover their investment or relocate is unreasonable. *See Ebel v. City of Corona,* 767 F.2d 635, 639 (9th Cir.1985); *T–Marc,* 804 F.Supp. at 1504 (amortization period must be reasonable).

However, because Plaintiffs operated their businesses between the time the Court declared the original Ordinance unconstitutional and until the new Ordinance was enacted, Plaintiffs suffered no "taking" of property for which they are entitled to compensation, unless the Court declares the new Ordinance to be unconstitutional.

Furthermore, since the parties have briefed the Court on this issue, the City created a new Section 656.725(a), in Ordinance 95–413–300, which provides alternate amortization periods. That section provides, in part:

> Notwithstanding any ordinance to the contrary, and notwithstanding any prior legal status of any adult entertainment or services facility (as defined in Part 11), as of July 1, 1996, no adult entertainment or service facility shall be operated unless it is located on a site or parcel which is zoned CCG–2, an exception has been granted or which is zoned CCBD; provided however, the requirement for an exception shall not be imposed if the facility was lawfully operating as an adult entertainment or service facility prior to the zoning code being amended to require an exception and its facility has continuously operated as such a facility.

The remaining sections of Section 656.725 provide for alternative amortization periods in the event the amortization period to July 1, 1996, is declared to be invalid or otherwise nonenforceable. For example, § 656.725(b) extends the amortization period to July 1, 1997; § 656.725(b) provides for an amortization period until July 1, 1998, and so on.

■ The shortest amortization period provided in the Ordinance Code is approximately 19 months from the enactment of Ordinance 95–190–651 and approximately 15 months from the enactment of Ordinance 95–307–109. The Court finds the amortization period to July 1, 1996 to be reasonable. *See T–Marc,* 804 F.Supp. at 1504 (upholding a one year amortization period); *SDJ, Inc. v. City of Houston,* 636 F.Supp. 1359 (S.D.Tex. 1986), *aff'd,* 837 F.2d 1268 (5th Cir.1988) (upholding a six month amortization period).

Accordingly, Plaintiffs' Motion for Partial Summary Judgment as to the Ordinance's failure to provide a reasonable amortization period is **DENIED.** The remainder of Plaintiffs' Motion for Partial Summary Judgment as to license disclosures and disparate sentencing guidelines is without merit and is therefore **DENIED.**

### B. J.R.'s

### (1) Procedural Safeguards for Zoning Exceptions

For the reasons discussed in section II.A.(6)(a), Plaintiffs' Motion for Partial Sum-

mary Judgment as to the Issue of Procedural Safeguards for Zoning Exceptions (Doc. No. 20) is **GRANTED IN PART** and **DENIED IN PART.** As previously held in this opinion, section 656.131(c)(2) of the Jacksonville City Code is declared to be unconstitutional, and is severed from the Ordinance. The remaining criteria of § 656.131(c) are valid, and Plaintiff's motion for partial summary judgment with respect to enactment procedures of those criteria is denied. Defendant's cross Motion for Summary Judgment on the issue of procedural safeguards (Doc. No. 26) is **DENIED IN PART**, in that the Court previously held earlier in this opinion that section 656.131(c)(2) of the Jacksonville City Code is unconstitutional, and is severed from the Ordinance. In all other respects, Defendant's cross Motion for Summary Judgment on the issue of procedural safeguards (Doc. No. 26) is **GRANTED.**

### (2) Alternative Avenues of Communication

For the reasons discussed in section II. A.(6)(a) and section III, Plaintiffs' Motion for Partial Summary Judgment as to the Issue of the Availability of Alternate Sites (Doc. No. 20) is **DENIED.** The City's cross Motion for Summary Judgment with respect to the issue of availability of alternate sites (Doc. No. 26) is **GRANTED.**

### (3) Narrowly Tailored to Further City's Interest

For the reasons discussed in section II. A.(6)(b), Defendant's Motion for Summary Judgment with respect to whether the Ordinance Code provisions are narrowly tailored to serve the government interest at issue is **GRANTED.**

### (4) Amortization Period

For the reasons discussed in section II. A.(7), Plaintiffs' Motion for Partial Summary Judgment as to the Issue of Amortization (Doc. No. 20) is **DENIED.**

### III. FINDINGS OF FACT AND CONCLUSIONS OF LAW

On July 31, 1997, the Court heard evidence on the remaining issues in dispute: whether the provisions in the Ordinances (1) requiring a minimum 1000 ft. room size, section 150.301(h) of Ordinance 95–307, and (2) prohibiting adult businesses from operating between the hours of 2:00 A.M. and 12:00 Noon, section 150.422 of Ordinance 94–190, are narrowly tailored to achieve the legitimate government interests of combating secondary effects of nude dancing and, in addition, whether the 1000 feet room requirement allows reasonable alternative avenues of communication.

### A. 1000 Ft. Room Size

Section 150.301, Ordinance 95–307, sets forth the general size requirements for adult entertainment establishments. Rooms which are legal in these facilities fall into four categories: (1) the entrance room or lobby, which may be of *any* size; (2) sanitary facilities; (3) rooms marked "no customers or patrons allowed;" and (4) all other rooms, which must not be less than 1,000 square feet in area.

Specifically, the Ordinance Code provides: (g) All premises shall have an entrance room or lobby, i.e., the room which is entered from the outside, and sanitary facilities as set forth in subsection (e). The entrance room or lobby may be as large or as small as the licensee chooses.

(h) All other rooms [other than entrance room or lobby, i.e., "the room which is entered from the outside," *see* § 150.301(g) ] must either:

(1) be not less than 1,000 square feet in area; or

(2) be clearly marked in letters not less than two inches in height "No Customers or Patrons Allowed".

§ 150.301(g), (h). Plaintiffs assert the 1000 square feet room requirement is irrational and serves no government interest, and therefore is not narrowly tailored. Furthermore, Plaintiffs argue the size requirement does not allow them alternative avenues of communication within the City of Jacksonville.

As discussed earlier in this opinion, the Court previously found the Ordinances were enacted to combat the undesirable secondary effect of nude entertainment—a legitimate government interest. *See* Order of June 29, 1996, at 10–11. The Court therefore will focus on whether the Ordinances are narrow-

ly tailored to serve the government interest. The Court will refer to the earlier part of this opinion, wherein the evidence showed that a total 95 sites were potentially available within the CCBD and CCG–2 zones that met the distance requirements of the Ordinances, and the Court found that as a matter of law, that number provided Plaintiffs reasonable avenues of communication. *See* section II. A.(6)(a). The Court also determined as a matter of law that with only one exception, the exception criteria of § 656.131(c) pass constitutional scrutiny, and severed the offensive criteria. *Id.* The parties presented additional evidence at trial with respect to the 1000 square feet room requirement, which the Court will consider to determine if the provision is narrowly tailored to achieve the governmental objective of combating secondary effects of nude dancing and whether Plaintiffs still have reasonable avenues of communication given the size requirement.

Brian Cleland testified that he operated his business called "Touch of Class" on 8841 Atlantic Boulevard pursuant to a written lease entered into on June 1994. Plaintiff's Ex. 1. He operated his business for five months before the initial Ordinance was enacted.

Cleland described his business as nude entertainment consisting of nude and partially nude dancing akin to a traditional striptease type of performance. The dancers/models, who were independent contractors, performed mostly to music. Cleland also sold lingerie on the premises. He described the physical layout of his business as follows: a foyer area in the front part of the building, about 4 feet by 6 feet in size, in which there was a locked guard gate with an employee stationed there to prevent anyone from entering the rest of the building without consent; a "lounge," which was the largest room at 16 feet by 20 feet, or 320 square feet; and two "session" rooms or modeling studios in the rear of the building approximately 10 feet by 12 feet in size. The lingerie was showcased in the lounge area, where it and other novelty items were sold. The business was 850 square feet in total.

The session rooms had a partition behind which the model could change clothes. The doors on the session rooms closed but did not lock and the rooms had peepholes which

Cleland used to occasionally monitor the sessions "so no one would do anything wrong." Cleland testified that when he looked through the peepholes, he occasionally saw customers masturbating and exposing their genitals to the women. On further questioning, Cleland admitted that he did not consider masturbation and exposed genitals to be "wrong." Rather, he said the peepholes were there for the models' protection, to prevent undue physical harassment by the customers. He was aware the models were tipped by customers and confirmed that tips from clients were their only form of compensation; they were not paid anything by Cleland.

Cleland testified that when the Ordinance was enacted, he could not retrofit his business to meet the 1000 square feet room requirement. He said he would have had to move his business to another location, and he did not know of any. He testified that he went to a particular area, and found a potential site to relocate his business. However, Cleland said that although he possibly could "physically" operate the modeling studios if they were 1000 square feet, he could not do so economically. Cleland voluntarily closed his business on March 1, 1995, reopened it on March 11, 1995, and again closed it on April 3, 1995, and it has remained closed.

Jerome Bonnett testified that he operated Lady J's Lingerie for two years before the Ordinances were enacted. His business consisted of an open showroom, which was 20 feet by 20 feet in size and the largest room; a small lounge area for the models with a TV; four modeling rooms, approximately 10 feet by 12 feet each, with doors and "look holes"; and a manager's room. Unlike Cleland's business, Lady J's did not have a foyer. The total square footage of Lady J's was 1500 square feet.

Bonnett described his business as a retail lingerie shop with private modeling in which the models performed semi-nude dance wearing some, albeit transparent, lingerie, usually to music. He, too, compared their performances to traditional striptease in adult night clubs. Bonnett also admitted that he was aware of masturbation and display of genitals "in some cases" at Lady J's, and that the modeling rooms contained tissues and lotion in "anticipation" of such activities. His

models, too, were only compensated through tips from clients. He said he did not know if his business would be able to operate without doors on the modeling rooms or if there was a large open room. He said he never tested the feasibility of those changes. Like Cleland, Bonnett testified he used the look holes primarily for the protection of the models, so they would not be "roughed up" by clients.

When the Ordinance was enacted, Bonnett's business did not meet the 1000 square feet room requirement. He checked with his landlord to see if his business could be retrofitted, but learned that because of the construction of the walls, it could not be done. He checked briefly to find a new location, but could not find one. Lady J's was closed in April 1995. Bonnett operates similar businesses in other cities, but none in Jacksonville. Prior to the Ordinance, Bonnett testified that there were 10 to 15 "lingerie shops" similar to Lady J's in Jacksonville, and now there are none.

Plaintiff's expert, Bruce McLaughlin, a renowned expert in land use law who has testified nationally in numerous federal and state cases concerning adult entertainment ordinances,[8] testified concerning an exhaustive survey he conducted in Jacksonville to determine the availability of sites in the City. McLaughlin explained his methodology to the Court. He took a random sample of the five planning areas of the City, to insure statistically significant representation of buildings in all types of zoning areas, and took external measurements of all free standing buildings in those areas. He determined from his survey that approximately 50% of the sites were immediately disqualified because they would not meet the 1000 square feet room requirement of the Ordinance. After excluding other locations, i.e., strip center areas and other areas in which Plaintiffs could not meet additional requirements such as restrictive covenants, parking lot require-

ments, etc., McLaughlin concluded that "close to 60%" of the available sites in Jacksonville were eliminated from consideration because of the Ordinance.

 Initially the Court notes that although Plaintiffs appear to focus their attack on the 1000 square foot room requirement, the Ordinance does not prevent Plaintiffs from expressing their erotic message in rooms smaller than 1000 square feet. The Ordinance allows that the "room which is entered from the outside" to be of *any* size. Therefore, Plaintiffs' contention that they cannot find sufficient buildings in the City of Jacksonville that would accommodate the Ordinance's size requirements is without merit. The evidence in this case clearly showed that with some minor retrofitting, Plaintiffs could simply move the performances from the back of their buildings to their front rooms. In that case, they could make the rooms as large or as small as they wish. There is no restriction in the Ordinance that nude dancing could not take place in the entrance rooms. Plaintiffs' claim that they cannot put the performances in the front room for fear of someone, i.e., a female shopper, inadvertently entering their "lingerie shop" expecting a traditional retail lingerie store, such as Victoria's Secret, is a potential problem but not one in which the City need concern itself. Plaintiffs could dispel that problem by placing signs outside the building alerting potential customers the adult conduct inside. In any event, the Ordinance need only provide Plaintiffs with *reasonable* avenues of communication, which the Court finds that it does.

 In addition, based on the evidence adduced at trial, plus the previous evidence submitted in the record, the Court finds that even the 1000 square feet room requirement is both narrowly tailored to achieve the legitimate government objective of preventing secondary effects of masturbation and prostitution,[9] and that there exist reasonable ave-

---

8. McLaughlin was certified as an expert in land use law, particularly with respect to adult businesses. *See* Plaintiffs' Exhibit 3 (McLaughlin List of Trial Testimony) and Exhibit 4 (McLaughlin Resume).

9. There was no evidence presented at trial that prostitution takes place in the modeling rooms at Plaintiffs' establishments. However, an affidavit of a Jacksonville Sheriff's Office police officer

(Doc. No. 14), submitted in support of the City's opposition to Plaintiffs' motion for preliminary injunction, and City of Jacksonville Records (Doc. No. 26), describing arrests for, *inter alia*, prostitution at lingerie shops, and providing studies from other cities concerning the secondary effects of nude dancing establishments in promoting prostitution and lewd and lascivious behavior, and other illegal acts, submitted in

nues of communication in which Plaintiffs can operate their businesses and still meet the requirements of the Ordinance. As to the first finding, Plaintiffs' own witnesses testified that masturbation took place in the modeling rooms, and was in fact anticipated by the owners that it would occur, as evidenced by their providing tissues and lotion for that purpose. The Ordinance provision seeks to prevent customers from masturbating in the presence of a nude or scantily clad woman who will earn her entire "tip" from the masturbating man who is closed in a room along with the naked woman. A larger room would still allow the "performers" to engage in the type of expression Plaintiffs described, a traditional form of striptease, while at the same time discouraging the unwanted secondary effects of public masturbation, a legitimate government objective. By requiring a larger room, the establishment is encouraged to allow multiple entertainers and customers in the same room at the same time, again discouraging secondary effects.[10] In *Barnes,* the Supreme Court classified totally nude dancing as "expressive conduct within the outer perimeters of the First Amendment," but only "marginally so." 501 U.S. at 566, 111 S.Ct. at 2460. In this case, accepting Plaintiffs' testimony that the type of expression the models perform is akin to a traditional striptease, certainly Plaintiffs are afforded no greater protection than a minimal level. The Ordinances in this case allow Plaintiffs the opportunity to express their erotic message—nude dancing—to a potentially larger audience without the additional risk of promoting the unwanted effects of public masturbation and prostitution that in-

dividual performances in a private room encourage.

■ As to the second issue, the Supreme Court in *Renton* found that the more than five percent of the entire land area of the city that was open to use as adult theater sites allowed for reasonable alternative avenues of communication. 475 U.S. at 53, 106 S.Ct. at 931–32. Under the *Renton* standard, by Plaintiffs' experts own testimony, the nearly forty percent of sites that would be available for Plaintiffs' businesses would easily pass constitutional scrutiny. The fact that fewer sites might be available because Plaintiffs, as anyone, also would have to comply with other zoning restrictions or otherwise fend for themselves in the real estate market does not give rise to a First Amendment violation. As the Supreme Court noted, "the First Amendment requires only that [the city] refrain from effectively denying [plaintiffs] a reasonable opportunity to open and operate [an adult business] within the city," and, like in *Renton,* the Ordinance before the Court "easily meets this requirement." 475 U.S. 41, 54, 106 S.Ct. 925, 932. Of course, McLaughlin also did not appear to consider a "common sense" solution to the problem of the smaller-size sites within strip malls—that is, that Plaintiffs could purchase more than one site and remove walls to accommodate the 1000 feet room size. There is no prohibition in the Ordinance that there cannot be archways within the larger-size room, because the room still would achieve the objectives of the Ordinance—providing a larger open area to discourage unwanted secondary effects—while still allowing Plaintiffs ample opportunity to express their message. Fac-

support of Defendant's motion for summary judgment, clearly show evidence of prostitution at Plaintiffs' and similar types of establishments. Of course, *Renton* held that a city may rely on its own as well as other cities' studies to demonstrate secondary effects. 475 U.S. at 51–52, 106 S.Ct. at 930–31. The same evidence in the record in this case also confirms that the male customers who frequented the establishments were encouraged by the models to "get comfortable," which is what the models were told by the owners to say to the customers to get them to disrobe and masturbate. The models used the term "get comfortable" so that she would know that the male in the room with her was not a police officer before she went too far.

10. Plaintiffs have taken issue with the size of the room, because it diminishes the opportunity for the models to perform individually in front of customers, exactly what the Ordinance is seeking to prevent. Undeniably, the 1000 square foot rooms are considerably larger than the approximate 10 feet by 12 feet rooms in which Plaintiffs' models had performed. However, a room of 1000 square feet, or 32.5 feet by 31 feet, is actually not much larger than a living room in a private home. Therefore, it is small enough to still provide an atmosphere conducive to legal adult entertainment while at the same time inhibiting individual performers and customers from physically interacting—thus it is narrowly tailored to achieve the City's legitimate objectives.

toring in those additional sites would add to the "nearly forty percent" of sites Plaintiffs' expert testified were available for Plaintiffs to utilize for their businesses, and certainly would meet the requirements of *Renton*.

## B. Hours of Operation

Section 150.422, Ordinance 94–190, provides:

> (a) Adult entertainment facilities, adult bookstores and adult movie theaters shall not be open between the hours of 2:00 a.m. and noon.

Brian Cleland, owner of Plaintiff "Touch of Class," testified that during the five months he operated his business, his hours of operation were 11:00 a.m. until 2:00 a.m. He said that about 10 to 15% of his customers patronized his business during the morning hours, and would have to turn customers away if he complied with the hour restriction in the Ordinance. On cross-examination, however, Defendant pointed out that during his deposition, Cleland testified that his business operated between the hours of 4:00 p.m. and 1:00 a.m., and did not say anything about morning hours. *See generally* Deposition of Cleland, Doc. No. 87.[11] Cleland did not contest his earlier testimony. Jerome Bonnett, who operated Lady J's Lingerie for two years, operated his business from 10:00 a.m. to 3:00 a.m. weekdays, and 10:00 a.m. to 4:00 a.m. on weekends. His testimony was that he generated the same level of business between the hours of 10:00 a.m. to noon as he did from 3:00 a.m. to 4:00 a.m., although he did not testify as to what proportion of his total business was generated during those hours. However, Bonnett admitted that the Ordinance's provision restricting hours of operation played only a limited part in his decision not to re-open his business. The Court also heard from Plaintiff's zoning expert, Bruce McLaughlin, on the City's regulation of hours of operation. McLaughlin testified that the three major reasons for government to limit hours of operation are (1) the potential impact on other properties, (2) for safety reasons, to allow fire marshals

and other officials access to inspect properties, and (3) for crime concerns. Typically, the types of businesses in which hours are regulated for those reasons are bars and taverns. McLaughlin said that according to the Planning Division of the Jacksonville Sheriff's Office, the peak times for police demand are late afternoon and early evening. He testified that demand between the hours of 10:00 a.m. to 11:00 a.m. was 3.9% and between 11:00 a.m. to noon was 4.1%, compared to 6.3% of total demand for the late afternoon/evening hours. In McLaughlin's opinion, there was no rational or legitimate connection between police demand and the hours restriction in the Jacksonville Ordinance, and that it was merely a "back-door" attempt to limit or eradicate adult businesses in Jacksonville.

Officer Anthony Quintero, a vice detective in the Jacksonville Sheriff's Office (JSO), testified for Defendant. Quintero testified that in his nearly three years experience on the vice squad and over 7 years with the JSO, there was a positive correlation between the hours of operation of adult businesses in the areas in which some of Plaintiffs operated and the level of prostitution in the area—the more customers in the adult businesses, the more customers that were available for prostitutes. He further testified that while most of the prostitution occurred during the evening hours, when further pressed on cross-examination, the officer admitted the "positive correlation" between prostitution and the hours of operation was highest between the hours of 12:00 noon and 2:00 a.m. Finally, Officer Quintero admitted that no arrests for prostitution had been made at any of Plaintiffs' clubs, and that in fact, the officer was not working vice during the time Plaintiffs were operating their businesses.

Notwithstanding Officer Quintero's testimony, which the Court does not find to have contributed any additional support to Defendants' argument regarding the correlation of police activity and hours, the Court does not find the restriction on hours of operation to

---

11. Defendant used Cleland's deposition testimony only to impeach his testimony at trial, and did not enter the deposition into evidence. However, the City previously had submitted Cleland's deposition in the Court file (Doc. No. 87, filed September 17, 1996) in support of its motion for summary judgment (Doc. No. 85, filed the same day); therefore, the Court may consider the deposition since it is part of the record in this case.

be an unreasonable restriction on Plaintiffs' free speech rights. First, the Court does not find Cleland was a credible witness on that issue. On cross-examination, Defendant pointed out that during his deposition, Cleland testified that his business operated between the hours of 4:00 p.m. and 1:00 a.m., and did not say anything about morning hours. *See* Deposition of Cleland, Doc. No. 87. Cleland did not contest his earlier testimony. Second, even the Jerome Bonnett, who said that the change in hours would have reduced his business, testified that the hours provision played a "limited part" in his decision not to reopen.

Ordinances restricting the hours of operation in adult-oriented establishments have been upheld on numerous occasions. The courts addressing the issue have found that the noise and increased crime rate during the wee hours of the morning justifies a modest reduction in hours of operation. *See Star Satellite, Inc. v. City of Biloxi*, 779 F.2d 1074 (5th Cir.1986) (upholding adult business ordinance which restricted hours of operation for adult bookstore to 10:00 a.m. to 12 midnight, Mondays through Saturdays, with no hours of operation allowed on Sundays); *Kutrom Corp. v. City of Center Line*, 979 F.2d 1171 (6th Cir.1992) (massage parlor; 9:00 p.m. closing); *Envy Limited v. City of Louisville*, 734 F.Supp. 785, 789 (W.D.Ky.) (restriction in hours of operation of adult businesses from 12:00 a.m. to 6:00 a.m. justified due to increase in crime rate during those hours); *Ellwest Stereo Theater, Inc. v. Boner*, 718 F.Supp. 1553, 1577 (M.D.Tenn.1989) (restriction of operation of adult businesses between 3:00 a.m. and 8:00 a.m. on weekdays and Saturdays and between 3:00 a.m. and 12:00 noon on Sundays is only a "minimum infringement" on the plaintiffs' First Amendment rights and "is justified by the difficulty of policing and enforcing the ordinance in the wee hours of the morning").

▬ In this case, the Jacksonville Ordinance limits adult businesses from operation between the hours of 2:00 a.m. and 12:00 noon, leaving fourteen hours in every day, over 5,000 hours per year, in which the adult entertainment establishments may operate and express their message. The Third Circuit upheld a restriction that required a 10:00 p.m. closing and limited adult entertainment to 3,600 hours per year, saying, "We think the Constitution requires no more." *Mitchell v. Commission on Adult Entertainment Establishments of the State of Delaware*, 10 F.3d 123, 139 (3rd Cir.1993). According to the testimony of one adult business, the hours restriction represents at most a four-hour reduction in Plaintiffs' business, two of those hours during the slower period from 10:00 a.m. to noon. The Court finds that the manner in which the City seeks to regulate the hours of adult businesses rationally relates to the goal of preventing crime, a legitimate government interest. The restricted hours of operation fall within the period of time when crime is more likely to occur and law enforcement personnel are more likely to be busy with other matters. Given the fact that Plaintiffs may express their erotic message for fourteen hours per day, seven days per week, such a restriction does not infringe upon Plaintiffs' First Amendment rights, because the requirement serves a legitimate interest of preventing crime and is narrowly tailored to achieve that interest.

## IV. OTHER CONSTITUTIONAL CLAIMS

Although not raised at trial, Plaintiffs had raised other claims in its complaint that the Court must address.

### (1) Void for Vagueness Claim

Plaintiffs allege that Ordinance 94–190–651 is void for vagueness in various respects. One of the sections that Plaintiffs' claims is void for vagueness, section 150.212, previously was declared unconstitutional by this Court in its Order of March 10, 1995, granting Plaintiffs' preliminary injunction (Doc. No. 18), and was subsequently amended in Ordinance 95–307–109. Therefore, Plaintiffs' claim as to that section is moot. The remaining sections that Plaintiffs claim are void for vagueness are: Sections 150.205(10), 150.206, 150.501, 150.103(n), 150.103(i), 150.410, and 150.504. *See* Complaint at 8.

▬ A statute is facially vague in violation of due process only when the law is impermissibly vague in all of its applications. *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 497, 102

S.Ct. 1186, 1192–93, 71 L.Ed.2d 362 (1982). The Court finds after carefully reviewing each of the claimed offensive provisions that none of the provisions suggested by Plaintiffs is vague in all its applications. Therefore, Plaintiffs' claim that the Ordinance is void for vagueness is **DENIED**.

### (2) Equal Protection Claim

Plaintiffs claim that Ordinance 94–190–651 includes certain exemptions which violate Plaintiffs' rights of Equal Protection under the Fourteenth Amendment to the United States and Florida Constitutions.

The Supreme Court recently discussed the standard by which courts must review legislation to determine if the equal protection challenge is valid:

> In areas of social and economic policy, a statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification. [Citations omitted.] Where there are "plausible reasons" for [the government's] action, "our inquiry is at an end." [Citation omitted.]

*Federal Communications Commission v. Beach Communications, Inc.*, 508 U.S. 307, 313–14 113 S.Ct. 2096, 2101, 124 L.Ed.2d 211 (1993). The Court also noted that the absence of legislative facts explaining the distinction on the record has no significance in a rational-basis analysis. "In other words, a legislative choice is not subject to courtroom factfinding and may be based on rational speculation unsupported by evidence or empirical data." *Id.* at 315, 113 S.Ct. at 2102.

With the exception of the exemption for facilities owned or operated by the City of Jacksonville, found in section 150.611(a), the Court finds that the City has come forth with "plausible reasons" for most of the exemptions in the Ordinance Code. With respect to the exemption in section 150.611(a), the City argues that City facilities are exempt be-

cause "[t]hey have never once sponsored or held an event where prostitution occurred." *See* City's Memorandum in Support of its Motion for Partial Summary Judgment (Doc. No. 25) at 18.

The Court disagrees that the relevant question is whether prostitution, a so-called secondary effect of adult entertainment which the Ordinance is seeking to prevent, occurred at the establishment. The relevant question is whether *adult entertainment* which may lead to the undesired secondary effects of prostitution, etc., has the potential to occur on the exempt property.

While there is no evidence in the record of the cases presently before the Court that such activity has taken place on City-owned property, the Court takes judicial notice of another matter pending before this Court in which the evidence clearly shows there *is* entertainment taking place on what is possibly property which the Ordinance exempts because, presumably, it is owned by the City.[12] In *White's Place, Inc. v. Nathaniel Glover*, Case No. 97–930–Civ–J–20C, filed on July 28, 1997, Plaintiff seeks a preliminary injunction against the City of Jacksonville prohibiting the City, *inter alia*, from enforcing the Jacksonville Adult Entertainment and Services Code, the Ordinance at issue in this case. The Plaintiff in that case operates a business called "The Gold Club," a show bar that engages in adult entertainment. Plaintiff claims the property on which The Gold Club operates is City-owned property, and is therefore exempt from the provisions of the Ordinance Code. There is evidence in that case there may be touching between customers and nude performers.

The Court need not resolve whether the property on which The Gold Club is located is or is not City-owned property. Defendant has not stated a rational basis for the exemption because there is a *possibility* that nude entertainment, and the secondary effects which follow, can in fact occur on

---

12. There is currently pending in state court the issue of whether the property on which The Gold Club is located, which is owned either by the Jacksonville Port Authority or the City of Jacksonville or both, is subject to the exemption of the Ordinance Code. How ever that issue is re-

solved is not dispositive in this case, because the Court is declaring the City-owned property exemption unconstitutional. Therefore, it does not matter how the state court rules on the property issue.

City-owned property. Thus, Defendant's stated rational basis is not even plausible. Accordingly, the Court finds that the exemption in Ordinance 94–190–651 and 95–307–109, § 150.611, for City-owned or operated facilities, is unconstitutional as it violates the Equal Protection Clause of the Fourteenth Amendment.

However, the Ordinance has a self-executing severability clause in section 150.611, which clearly provides that if the exemptions are "held or declared invalid or unconstitutional, in whole or in part, then the entire exemption is void and invalid and no person shall be entitled to such exemption." Thus, the Court can sever the above exemption, § 150.611(a), from the Ordinances. Accordingly, with the exemption severed from the Ordinance Code, City-owned or operated property is no longer exempt. *See* Ordinances 94–190–651 and 95–307–109, § 150.611(b). The remaining provisions of the Ordinances are applicable.

## V. CONCLUSION

With the exception of §§ 150.611(a) and 656.131(c)(2) of the Jacksonville City Code, which the Court find to be unconstitutional, and which will be severed from the Ordinance Code, the Court finds that the Ordinances at issue (1) are content-neutral; (2) are designed to serve a substantial government interest; (3) do not unreasonably limit alternative avenues of communication; and (4) are narrowly tailored to serve the government interest at issue. Moreover, they are not void for vagueness, do not violate Plaintiffs' federal due process rights, and, with the exception noted above for section 150.611(a), do not amount to an equal protection violation.

Accordingly, it is ORDERED AND ADJUDGED:

*Case No. 95–181–Civ–J–20A/95–434–Civ–J–20A:*

(1) Defendant's Motion for Judgment of Dismissal with Prejudice as to Plaintiffs Amy Watson and Michael Crowell (Doc. No. 56) is **GRANTED**. This action as to Plaintiffs Amy Watson and Michael Crowell is hereby **DISMISSED WITH PREJUDICE;**

(2) Defendant's Motion for Partial Summary Judgment as to Enactment Procedure for Challenged City Ordinances (Doc. No. 57) is **GRANTED;**

(3) Plaintiffs' Motion for Partial Summary Judgment as to the Issue of Availability of Alternate Sites is **GRANTED IN PART** in that the Court declares § 656.131(c)(2) of the Jacksonville City Code to be unconstitutional, and will sever that provision from the Ordinance; in all other respects, Plaintiffs' Motion for Partial Summary Judgment as to the Issue of Availability of Alternate Sites (Doc. No. 78) is **DENIED;**

(4) Plaintiffs' Motion for Partial Summary Judgment as to the Issue of Amortization (Doc. No. 78) is **DENIED;**

(5) Plaintiffs' Motion for Partial Summary Judgment as to the Issue of License Disclosures and Disparate Sentencing (Doc. No. 78) is **DENIED;**

(6) Defendant's Motion for Summary Judgment of Dismissal for Lack of Standing (Doc. No. 82) is **DENIED;**

(7) Defendant's Motion to Dismiss Plaintiff Gregory A. King for Lack of Standing (Doc. No. 84) is **MOOT;**

(8) Defendant's Motion for Summary Judgment (Doc. No. 85) is **DENIED;**

(9) The Clerk shall enter judgment in favor of Plaintiffs, and against Defendant, on their claims for declaratory and injunctive relief for Ordinances 94–190–651 and 95–307–109, § 150.611(a), which provision is declared to violate the Equal Protection Clause of the Fourteenth Amendment and, according to Defendant's Ordinance, are held invalid;

(10) The Clerk shall enter judgment in favor of Defendant City of Jacksonville and against Plaintiffs on Plaintiffs' claims for declaratory and injunctive relief and for damages, with the exceptions noted in (3) and (9) above, where the Court declared §§ 150.611(a) and 656.131(c)(2) of the Jacksonville City Code to be unconstitutional severed the provisions from the Ordinance Code. Plaintiffs' remaining claims, and Plain-

tiffs' request for injunctive and declaratory relief and for damages, is **DENIED.**

*Case No. 95–1005–Civ–J–20A:*

(11) Plaintiffs' Motion for Partial Summary Judgment as to the Issues of Procedural Safeguards for Zoning Exceptions and Amortization (Doc. No. 20) is **DENIED;**

(12) Plaintiffs' Motion for Partial Summary Judgment as to the Issue of the Availability of Alternate Sites and Amortization (Doc. No. 20) is **GRANTED IN PART,** in that the Court declares § 656.131(c)(2) of the Jacksonville City Code to be unconstitutional, and will sever that provision from the Ordinance; in all other respects, Plaintiffs' Motion for Partial Summary Judgment as to the Issue of Availability of Alternate Sites (Doc. No. 20) is **DENIED;**

(13) Defendant's cross Motion for Summary Judgment (Doc. No. 26) is **GRANTED IN PART** and **DENIED IN PART:**

(A) With respect the issue of procedural safeguards, the motion is **DENIED IN PART,** in that Section 656.131(c)(2) of the Jacksonville City Code is held to be unconstitutional, and is severed from the Ordinance.

(B) In all other respects, Defendant's cross Motion for Summary Judgment (Doc. No. 26) is **GRANTED.**

(14) The Clerk shall enter judgment in favor of Plaintiffs, and against Defendant, on their claims for declaratory and injunctive relief for § 150.611(a) of the Ordinance, which provision is declared to violate the Equal Protection Clause of the Fourteenth Amendment and, according to Defendant's Ordinance, is held invalid.

(15) The Clerk shall enter judgment in favor of Defendant City of Jacksonville and against Plaintiffs on Plaintiffs' claims for declaratory and injunctive relief and for damages, with the exceptions noted in (13)(A) and (14) above, where the Court declared §§ 150.611(a) and 656.131(c)(2) of the Jacksonville City Code to be unconstitutional severed the provisions from the Ordinance Code. Plaintiffs' remaining claims, and Plaintiffs' request for injunctive and declaratory relief and for damages, is **DENIED.**